DA 10-0170

IN THE SUPREME COURT OF THE STATE OF MONTANA

2011 MT 117

JOSEPH WILLIAM DOYLE and VIRGINIA CITY
BUILDING CORPORATION, a Montana Corporation,

      Plaintiffs and Appellants,

  v.

MICHAEL V.B. CLARK, RALPH HAMLER, individually
and as agent of Madison County, and MADISON
COUNTY, a subdivision of the State of Montana,

      Defendants and Appellees.

APPEAL FROM:    District Court of the Fifth Judicial District,
                  In and For the County of Madison, Cause No. DV 29-06-62
                  Honorable Loren Tucker, Presiding Judge

COUNSEL OF RECORD:

      For Appellants:

            Terry F. Schaplow, Attorney at Law, Bozeman, Montana

      For Appellee Clark:

            Thomas R. Scott, Attorney at Law, Dillon, Montana

      For Appellees Hamler and Madison County:

            Richard A. Larson, Larson Law Office, P.C., Helena, Montana

Submitted on Briefs:  April 20, 2011

Decided:  June 1, 2011

Filed:

_____
                           Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1    Defendant Michael Clark (Clark) owns property near Virginia City, Montana, on which he stores numerous unused, abandoned, or in-need-of-repair vehicles. Joseph Doyle (Doyle) owns surrounding and contiguous properties. Doyle tried for several years to get Clark to clean up the portion of Clark's property that was visible from Doyle's property. When his attempts proved unsuccessful, Doyle sued Clark and others claiming, among other things, that Clark breached a written and oral contract and created a public and private nuisance. A jury ruled in favor of Clark and the other defendants on all claims. Following the trial, the Fifth Judicial District Court in Madison County awarded costs to the defendants. Doyle appeals. We affirm in part and reverse and remand in part.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2    Doyle, through his company Virginia City Building Corporation, began buying property in or near Virginia City, Montana, in 1979. He continued purchasing contiguous pieces of property for several years with the intention of developing the property and realizing a significant profit. In 1989, Clark bought a parcel of property adjacent to and easily visible from much of Doyle's property. Clark used approximately one acre of this property to store used vehicles in need of repair as well as old washing machines, dryers, and tires.

¶3    Doyle claims he approached Clark multiple times and asked Clark to clean up the old cars and debris and each time Clark agreed, but did nothing. In 1991, Doyle contacted Defendant Ralph Hamler (Hamler), the Madison County Sanitarian, to

complain that Clark was operating a visible junk yard. Hamler inspected Clark's property and determined that Clark was in violation of the Motor Vehicle Recycling and Disposal Act (MVRDA), Title 75, chapter 10, part 5, MCA. Between 1991 and 2003, Hamler sent at least five letters to Clark notifying him that he was in violation of the law and instructing Clark to come into compliance. Clark appears to have taken certain actions after receipt of each letter that satisfied Hamler temporarily but were inadequate to satisfy Doyle.

¶4 In April 1995, Doyle contacted Clark again. It appears a product of this meeting was a hand drawn document on the back of a piece of cardboard purporting to depict Clark's property and the location of trailers, a structure and abandoned cars. A handwritten notation on the document reads "Move out junk car" or "Move out junk cars." Both Doyle and Clark signed and dated the drawing; however, Doyle dated it April 17, 1995, while Clark dated it April 17, 1996. Doyle claims this document constitutes a written contract under which Clark was obligated to remove the abandoned cars. Despite this purported agreement, Clark again failed to clean up his property.

¶5 In 2005, Doyle entered into a contract with T.L.C. Building and Land Development under which T.L.C. agreed to purchase a specific parcel of Doyle's property for $400,000, contingent upon Clark "clearing the junk & debris" on Clark's property "within 180 days of ratification of the property." The contract expressly stated that Clark's failure to do so would render the purchase contract null and void. Doyle presented no evidence that Clark was aware of his contract with T.L.C. Clark did not satisfactorily clear his property and the contract became void.

¶6    In 2006, Doyle filed suit against Clark for breach of oral and written contract and creating a public and private nuisance. He also asserted claims against Clark, Hamler, and Madison County for negligence per se, negligence, interference with prospective business advantage, emotional distress, and tortious interference with contractual relations. He sought general, special, compensatory, and punitive damages as well as costs.

¶7    In February 2008, Doyle filed a complaint with The Department of Environmental Quality (DEQ) with respect to Clark's property. Ed Coleman (Coleman), Section Chief of Complaint Management at DEQ, sent Clark two letters advising him of applicable law and requesting an appointment to conduct a site visit. Coleman visited Clark's property on July 15, 2008. Shortly thereafter, Coleman sent Clark a letter advising Clark that he was in violation of the MVRDA and the Solid Waste Management Act (SWMA). Coleman instructed Clark to bring his property into compliance with these laws by October 1, 2008. As a result of DEQ's inspection of Clark's property and its subsequent determination of statutory violations, Doyle notified the District Court in August 2008 that he intended to call Coleman as an expert trial witness.

¶8    Prior to trial, all defendants moved for summary judgment on some or all claims against them. The District Court granted the respective motions in part and denied them in part, leaving the following issues to be tried by the jury:

- *As to Clark*:  Did Clark breach an oral contract with Doyle? Did Clark intentionally interfere with Doyle's contractual or business relationships? Did Clark intentionally or negligently inflict emotional distress upon Doyle? Did

4

Clark create and operate a public or private nuisance?

- *As to Hamler, individually*: Did Hamler intentionally interfere with Doyle's prospective business advantage? Did Hamler intentionally inflict emotional distress upon Doyle?

- *As to Madison County*: Did Madison County's agent, Hamler, take specific action to protect Doyle or Doyle's property? If Hamler did take such action, did Madison County intentionally or negligently inflict emotional distress upon Doyle? Did Madison County allow Clark to create and operate a public or private nuisance?

¶9 A jury trial commenced on March 8, 2010. During trial, several witnesses testified, including Coleman. However, the District Court refused the exhibits offered through Coleman, including the compliance action letter to Clark, on the grounds that Coleman's letters to Clark included statements of the applicable environmental laws as interpreted by DEQ. The court concluded it was not appropriate for the jury to receive explanations of the law from a witness; rather, explanations of law were the court's domain. Following Coleman's truncated testimony, Doyle filed his Second Proposed Supplemental Jury Instructions, which addressed and incorporated much of Coleman's rejected testimony. The District Court refused to give the instructions.

¶10 At the close of the evidence, Clark, Hamler, and Madison County moved for directed verdicts. Clark argued no oral contract existed for lack of consideration. He also argued he could not be found liable for intentional interference with contractual or business relations because he had no knowledge of such relations. Lastly, he asserted he

5

should not be held liable for intentional infliction of emotional distress as Doyle failed to show serious emotional distress or illness. The court granted a directed verdict on the issue of the existence of an oral contract, concluding there was no consideration to support a contract between Clark and Doyle.

¶11 Hamler and Madison County each argued that the remaining issues against them should be dismissed. The District Court disagreed and denied their motions for directed verdicts.

¶12 The court and counsel then conducted a discussion of jury instructions. Having previously determined that no oral or written contracts existed, the court refused jury instructions pertaining to contracts but offered instead an instruction on promissory estoppel. Additionally, addressing the concept of negligence per se, the court concluded that had any of the defendants violated applicable statutes, such statutes did not in any event give rise to a private right of action. As a result, the court refused to instruct the jury on negligence per se. Doyle objected to both of these rulings.

¶13 During closing arguments, Doyle's attorney referenced some of Coleman's testimony and Clark's attorney objected. The District Court sustained the objection and held a bench conference. Doyle submits that the court threatened a mistrial if Coleman's name or testimony was mentioned again.

¶14 The jury returned a verdict for Clark, Hamler, and Madison County. Specifically, the jury ruled that Clark did not create and maintain a nuisance that caused Doyle damages, nor did Clark act negligently or tortiously interfere with Doyle's prospective business advantage, or inflict emotional distress upon Doyle. Lastly, vis-à-vis Clark, the

6

jury ruled that Doyle had not proved the elements of promissory estoppel, that Clark's conduct had not caused Doyle's injury, and that Clark was not subject to punitive damages.

¶15 Additionally, the jury found that Hamler, as Madison County's agent, had not acted to protect Doyle or Doyle's property. As a result, the jury found Madison County not liable on any claims against it. Lastly, it ruled that Hamler, individually, was not negligent in any of his actions involving Doyle and had not committed any intentional torts against Doyle.

¶16 After the trial, Clark, Hamler, and Madison County moved for their respective costs in the amount of $1,649.75 for Clark and $316 for Hamler and Madison County. The District Court awarded costs to the defendants over Doyle's objections. Doyle appeals.

## ISSUES

¶17 A restatement of the issues on appeal is:

¶18 Did the District Court abuse its discretion in excluding certain exhibits and testimony?

¶19 Did the District Court abuse its discretion in refusing to give Doyle's proposed jury instructions on breach of contract and negligence theories?

¶20 Did the District Court abuse its discretion by limiting Doyle's counsel's closing argument with threats of a mistrial?

¶21 Did the District Court abuse its discretion in awarding Clark his costs?

## STANDARD OF REVIEW

¶22 We review a district court's evidentiary rulings, including the admissibility of expert testimony, and rulings on jury instructions for an abuse of discretion. *DiMarzio v. Crazy Mt. Constr., Inc.*, 2010 MT 231, ¶¶ 19, 21, 358 Mont. 119, 243 P.3d 718 (internal citations omitted). We also review a district court's award of costs for an abuse of discretion. *Sletteland v. Roberts*, 2003 MT 17, ¶ 9, 314 Mont. 76, 64 P.3d 979 (citations omitted).

## DISCUSSION

¶23 *Did the District Court abuse its discretion in excluding certain exhibits and testimony?*

¶24 Doyle claims the court abused its discretion by refusing to admit certain evidence and exhibits during the testimony of DEQ's Ed Coleman. During Coleman's testimony, Doyle offered into evidence three letters from Coleman to Clark. In each of these letters Coleman summarized the legal obligations imposed under MVRDA and SWMA. Doyle also offered a series of e-mail communications between Coleman and other DEQ employees discussing the legal "shielding" requirement of the MVRDA. Lastly, he offered an internal legal memorandum setting forth legal definitions and an analysis of the shielding requirement in the MVRDA. At the offer of each exhibit, opposing counsel objected on various grounds, including relevancy, hearsay, lack of foundation and that the exhibit was a statement of the law. The District Court sustained the objections and noted that it was "the province of the court to instruct this jury what the law is and what the definitional aspects of the law require."

¶25 We conclude the District Court did not abuse its discretion. As noted from the document descriptions above, each of the documents contained DEQ's interpretations of the law. As we explained in *Perdue v. Gagnon Farms, Inc.*, 2003 MT 47, ¶ 28, 314 Mont. 303, 65 P.3d 570, "We distinguish ultimate issues of fact from ultimate issues of law because legal conclusions offered by an expert witness invade the province of the jury whose duty it is to apply the law as given in the jury instructions to the facts of the case. Such expert opinions on the law can be highly prejudicial." We therefore ruled that testimony as to legal conclusions presented by the witness was inadmissible. *Perdue*, ¶ 28 (citation omitted). *See also Peterson v. St. Paul Fire & Marine Ins. Co.*, 2010 MT 187, ¶ 69, 357 Mont. 293, 239 P.3d 904. While the parties in the case before us argued over whether Coleman was an expert witness, it was not an issue before us on appeal, nor is it relevant in our application of *Perdue*. It is the trial judge's duty, not a witness's, to instruct the jury "on every issue or theory finding support in the evidence, and this duty is discharged by giving instructions which accurately and correctly state the law applicable in a case." *State v. Robbins*, 1998 MT 297, ¶ 36, 292 Mont. 23, 971 P.2d 359, *overruled on other grounds, State v. LaMere*, 2000 MT 45, ¶ 61, 298 Mont. 358, 2 P.3d 204. *See also* M. R. Civ. P. 51.

¶26 *Did the District Court abuse its discretion in refusing to give Doyle's jury instructions on breach of contract and negligence theories?*

¶27 As discussed above, after the evidence was presented but before closing arguments, the parties presented motions for directed verdicts. In response to Clark's motion pertaining to the absence of an oral contract, a lengthy discussion was held on

whether Doyle had given any consideration to Clark that would create a contract. Doyle argued he had spent substantial money to improve his property in preparation for its sale premised upon Clark's agreement to remove the visible junk on his land; in other words, he maintained Clark was aware of and agreed to this mutual arrangement. However, when the court pressed him to point to any testimony regarding such a mutual agreement, he could not do so.

¶28 The District Court concluded Clark received no consideration and therefore no oral or written contract came into existence. As a result, the court directed a verdict for Clark on this claim and refused to give the jury instructions relating to breach of oral or written contracts. However, alternatively, the court surmised "there [was] sufficient basis . . . for Mr. Doyle to proceed on a promissory estoppel theory." The court determined that Doyle could seek, under a promissory estoppel theory, the same relief he requested under his contract claim as set forth in the pretrial order, opining that the case had been presented to the jury in a manner appropriate for a promissory estoppel case. While counsel for both Doyle and Clark disagreed that promissory estoppel was applicable to the case, the District Court determined it would instruct the jury on the elements of promissory estoppel.

¶29 The essential elements of a contract are: (1) identifiable parties capable of contracting; (2) their consent; (3) a lawful object; and (4) a sufficient cause or consideration. Section 28-2-102, MCA. Consideration is something of value received by a promisor from a promisee; here it would be something of value received by Clark from Doyle. Consideration can take the form of many things, including, but not limited to a

10

monetary payment, an act, a forbearance, or a return promise. *Black's Law Dictionary* 300 (Bryan A. Garner ed., 7th ed., West 1999). However, there was no evidence of consideration passing from Doyle to Clark presented during this case; therefore, the District Court correctly concluded that no oral or written contract was created. As a result, the District Court did not abuse its discretion in refusing to instruct the jury on contract law.

¶30   As for the court's sua sponte offer of instructions on promissory estoppel, we note the court could have refused instructions pertaining to contracts and not given Doyle an alternative legal theory that may have proven persuasive to the jury. As we conclude this jury instruction potentially benefitted rather than harmed Doyle, we find no abuse.

¶31   Doyle appears to also assert the District Court eliminated his negligence and negligence per se claims and replaced them with promissory estoppel. The record does not support this assertion. First, we note the District Court did not eliminate Doyle's negligence claims and gave each of Doyle's proposed jury instructions on negligence. Moreover, the special verdict form required the jury to apportion any negligence between the parties. The jury unanimously apportioned 100% of negligence to Doyle. Doyle's argument vis-à-vis negligence jury instructions is without merit.

¶32   Second, as explained above, the District Court refused to instruct the jury on negligence per se based upon the court's conclusion that there was no private right of action under the applicable statutes in this case. Negligence per se is a failure to comply with a legal mandate. *McManus v. Butte Elec. Ry.*, 68 Mont. 379, 219 P. 241 (1923). To bring a claim for negligence per se, a plaintiff must establish: (1) that the defendant

11

violated a particular statute; (2) that the statute was enacted to protect a specific class of persons; (3) that the plaintiff is a member of the class; (4) that the plaintiff's injury is the kind of injury that the statute was enacted to prevent; and (5) that the statute was intended to regulate members of the defendant's class. If the plaintiff proves these elements, a defendant is negligent as a matter of law. *Stipe v. First Interstate Bank - Polson*, 2008 MT 239, ¶ 14, 344 Mont. 435, 188 P.3d 1063 (citations omitted). In addition to these five elements, however, is the requirement that the statute allegedly violated allows a private right of action. *See generally Wombold v. Assoc. Fin. Serv. Co.*, 2004 MT 397, 325 Mont. 290, 104 P.3d 1080, ¶¶ 32-47, *overruled on other grounds, Essex Ins. Co. v. Moose's Saloon, Inc.*, 2007 MT 202, 338 Mont. 423, 166 P.3d 451. In other words, if the statute in question may be enforced only by the state, a private individual may not attempt to recover for violation of the statute under a negligence per se claim.

¶33 Doyle asserts a negligence per se claim against Clark for failure to comply with the MVRDA, and against Hamler and Madison County for failure to enforce the MVRDA. The statute clearly sets forth that violation of the statute subjects the violator to sanctions in the form of a fine, penalty, and/or imprisonment. Section 75-10-542, MCA. Nothing in the statute suggests that the Legislature intended to grant individuals a private right of action; in fact, the sole available sanctions are criminal and administrative in nature (in contrast with *Wombold*, ¶¶ 42-44, in which we found that the existence in the statute of a private attorney fee provision was indicative of a legislative intent to allow for a private right of action). Therefore, the District Court's ruling on this issue was neither an erroneous interpretation of the statutes nor an abuse of discretion.

¶34 Finally, Doyle complains that the District Court refused to give his proposed supplemental jury instructions on negligence per se. As we held above, the District Court did not abuse its discretion in refusing Doyle's original proposed instructions on negligence per se. It therefore did not abuse its discretion in refusing supplemental instructions on the same theory.

¶35 *Did the District Court abuse its discretion by limiting Doyle's counsel's closing argument with threats of a mistrial?*

¶36 Doyle's attorney has submitted an affidavit alleging that the District Court threatened him in an off-the-record sidebar with a mistrial if he made further reference to Coleman or Coleman's testimony during closing argument. It is well-established that we review the actions of a district court on appeal based upon the record. *State v. St. Dennis*, 2010 MT 229, ¶ 38, 358 Mont. 88, 244 P.3d 292 (citations omitted). There is no record-based support for counsel's assertions. Moreover, counsel does not provide any legal authority for our review of a claimed district court error that is not part of the record. For these reasons, we decline to address this issue.

¶37 *Did the District Court abuse its discretion by awarding Clark his costs?*

¶38 Doyle asserts the District Court abused its discretion when it awarded Clark his costs. He argues that § 25-10-501, MCA, expressly states that a party must file its bill of costs within five days of the verdict. The verdict in this case was entered on Thursday, March 11, 2010. On Thursday, March 18, Hamler and Madison County filed a timely memorandum of costs within five business days from entry of the verdict. Clark filed his

13

memorandum of costs on Friday, March 19, 2010. Over objection, the District Court awarded costs to Hamler, Madison County, and Clark.

¶39 Section 25-10-501, MCA, provides:

> The party in whose favor judgment is rendered and who claims the party's costs shall deliver to the clerk and serve upon the adverse party, within 5 days after the verdict or notice of the decision of the court or referee or, if the entry of the judgment on the verdict or decision is stayed, then before the entry is made, a memorandum of the items of the party's costs and necessary disbursements in the action or proceeding. The memorandum must be verified by the oath of the party, the party's attorney or agent, or the clerk of the party's attorney, stating that to the best of the person's knowledge and belief, the items are correct and that the disbursements have been necessarily incurred in the action or proceeding.

¶40 We have repeatedly stated, "It is well-established that, in cases involving a jury trial, as opposed to a bench trial, this statute requires a party to file a memorandum of costs within five days after the jury returns its verdict." *Kunst v. Pass*, 1998 MT 71, ¶ 11, 288 Mont. 264, 957 P.2d 1. *See also Rocky Mt. Ent. v. Pierce Flooring*, 286 Mont. 282, 300, 951 P.2d 1326, 1337 (1997) (citing *R.H. Grover, Inc. v. Flynn Ins. Co.*, 238 Mont. 278, 777 P.2d 338) (1989) ("to claim costs under § 25-10-501, MCA, the plaintiffs had five days from the date of the jury verdict to file and serve upon the adverse party a verified memorandum of costs.") A party who fails to file a timely memorandum of costs waives its right to receive its costs. *See Cenex, Inc. v. Board of Comm'rs for Yellowstone Co.*, 283 Mont. 330, 338, 941 P.2d 964, 968 (1997); *Delaware v. K-Decorators, Inc.*, 1999 MT 13, ¶ 67, 293 Mont. 97, 973 P. 2d 818.

¶41 While we have not previously and unequivocally stated that the five-day period provided for in § 25-10-501, MCA, is five *business* days, we take this opportunity to do

14

so now. In *Karell v. Am. Cancer Soc'y.*, 239 Mont. 168, 178, 779 P.2d. 506, 512 (1989), in which we addressed the timeliness of a § 25-10-501, MCA, claim, we applied M. R. Civ. P. 6(a). Under Rule 6(a), a party required to file a document with the court in "less than 11 days" shall exclude "intermediate Saturdays, Sundays and holidays." *See also K-Decorators,* ¶ 71. In the case before us, Hamler and Madison County filed their cost memorandum on the fifth business day. It is undisputed however that Clark filed his bill of costs on the sixth business day. Clark therefore waived his right to recover costs, and the District Court abused its discretion in awarding them.

## CONCLUSION

¶42 For the foregoing reasons, we conclude the District Court did not abuse its discretion in excluding certain testimony and exhibits and refusing certain proposed jury instructions. The court, however, did abuse its discretion in awarding Clark his costs. We therefore affirm the judgment of the District Court but with instructions to vacate the award of costs to Clark.

/S/ PATRICIA COTTER

We concur:

/S/ JAMES C. NELSON
/S/ BRIAN MORRIS
/S/ BETH BAKER
/S/ JIM RICE

15