DA 11-0288

## IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2012 MT 29

PASTIMES, LLC,

> Plaintiff, Counterclaim Defendant,
> and Appellant,

v.

TIM CLAVIN, Personal Representative
of the Estate of Lila M. Clavin, Deceased,

> Defendant, Counterclaimant, Third-Party
> Defendant, and Appellee,

v.

PASTIMES, a General Partnership and
ROBERT N. GILBERT, individually,

> Third-Party Defendants.

APPEAL FROM:  District Court of the First Judicial District,
In and For the County of Lewis and Clark, Cause No. ADV2005-617
Honorable Dorothy McCarter, Presiding Judge

COUNSEL OF RECORD:

> For Appellant:

> Alice J. Hinshaw, Craig D. Charlton, Hinshaw Law Firm, PLLC, Helena,
> Montana

> For Appellee:

> Andrew J. Utick, Utick Law Firm, Helena, Montana

Submitted on Briefs:  November 16, 2011
Decided: February 7, 2012

Filed:

_____
Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1 Pastimes, LLC (Pastimes), appeals from the judgment of the First Judicial District Court, Lewis and Clark County, that valued Pastimes at the time of trial rather than at the death of Lila Clavin (Lila) and awarded attorney fees and costs to the Clavin Estate (Estate). We affirm in part and reverse in part.

¶2 We review the following issues on appeal:

¶3 *1. Whether the District Court properly valued the Estate's interest at the date of trial rather than at the time of Lila's death.*

¶4 *2. Whether the District Court properly determined the interest rate.*

¶5 *3. Whether the District Court properly relied upon the indemnification provision to award attorney fees and costs to the Estate.*

## FACTUAL AND PROCEDURAL BACKGROUND

¶6 Tim Clavin (Tim) began work to establish a bar and casino business in Helena, Montana, in 1994. The business eventually grew into Nickels Gaming Parlor (Nickels). Charles Graveley (Graveley) owned an unused liquor license. Tim, Graveley, and Jack Creach (Creach) formed Alley Cat, LLC (Alley Cat). Alley Cat failed in several attempts to open a casino. Fred Radke (Radke) approached Tim in 1995 about renting Radke's building at 2100 North Main Street in 1995 to use for the casino. Tim dropped Graveley and Creach as partners and renegotiated the purchase agreement of the liquor license with Graveley. Tim signed a lease with Radke and began paying rent as of December 1995.

¶7 Tim's mother, Lila, and Robert Gilbert (Gilbert) founded Pastimes, d/b/a Nickels, on July 10, 1996. They executed an Operating Agreement (Agreement) on August 1, 1996.

The Agreement lists Gilbert and Lila as members of the organization. Gilbert and Lila each held 50 percent ownership interests in the business. The Agreement names Gilbert as initial manager of the business and sets a termination date for Pastimes on December 31, 2013.

¶8 Section 5.05 of the Agreement provides that upon dissolution of Pastimes, company assets are divided first by the contents of each member's capital account, and second, in proportion to each member's membership interest. Section 10.01(b) provides that Pastimes shall terminate "upon the death, retirement, resignation, bankruptcy, court declaration of incompetence with respect to, or dissolution of, a Member," unless at least two members remain who agree to continue the business of Pastimes.

¶9 Gilbert served as manager of Pastimes from 1996 through 1998. Tim managed Pastimes from 1998 until January 2000. The District Court found that Tim had "failed to maintain the business in a responsible way." Testimony from Gilbert and an employee of Nickels indicated that the business regularly did not pay power bills, rent, or loan payments during Tim's tenure as manager. Gilbert resumed his role as manager of Pastimes in January 2000.

¶10 Lila died on November 1, 2000. Tim serves as the personal representative for the Estate. Gilbert and Tim could not agree on the value of Lila's share of Pastimes at the time of Lila's death. This disagreement over the value of Lila's share at the time of her death led Tim and Gilbert to conclude that Gilbert should continue to operate Pastimes. Gilbert continued to operate Pastimes after Lila's death pursuant to their oral agreement. Gilbert transferred Lila's 50 percent interest in the liquor license to the Estate. Gilbert attributed 50

3

percent of Pastimes's tax liability to the Estate each year on Pastimes's tax return. Gilbert has served as manager since Lila's death.

¶11 Gilbert filed a complaint for declaratory relief on behalf of Pastimes in 2005. Gilbert requested a date-of-death valuation for Lila's interest in 2005. The Estate filed a counterclaim against Pastimes in which it sought a declaratory judgment that Pastimes had been a partnership. The Estate also filed a third-party complaint against Gilbert for breach of fiduciary duties under the Montana Partnership Act. The Estate filed a motion for partial summary judgment in 2007, on the grounds that the statute of limitations barred Pastimes's actions, that Pastimes had been a partnership, and that Pastimes lacked standing to bring its claim for declaratory relief.

¶12 Pastimes filed its own motion for summary judgment to establish Pastimes's status as a limited liability corporation. The District Court issued a minute entry ruling to the effect that the Estate deserved more than the value of Lila's original investment in 1996. The parties argued the valuation issue on February 17, 2009. The District Court eventually determined that the valuation of Lila's interest should be based on the "present-day" value of Pastimes.

¶13 The District Court conducted a three-day bench trial in January 2010. The court determined that no partnership ever existed between Lila and Gilbert. The court determined instead that Pastimes at all times existed as a limited liability company. The court recognized that the Estate had not dissociated from the limited liability company after Lila died, as contemplated in the Agreement. The court determined that the time of trial should provide the date of valuation to apply to Lila's interest in Pastimes. The court first pointed to

4

the fact that Lila and Gilbert each held 50 percent ownership interests in Pastimes as set forth in Section 2.12 of the Agreement. The court further pointed to the fact that Section 5.05(a) distributes Pastimes's assets first from the member's respective capital account, and second, in proportion to the member's membership interest in the event of a dissolution.

¶14 Gilbert and Tim voluntarily had agreed to the continued operation of Pastimes after Lila's death in order to allow the parties to earn a return on their investments. The parties' oral agreement obviated the need for the court to value the interest of the Estate pursuant to the terms of the Agreement. The court acknowledged that Gilbert had contributed to the business after Lila's death and that the Estate had not. The court reasoned, however, that "it must also be noted that the business itself was created by Lila and [Gilbert], and without Lila's initial contribution to the business it would not be in existence today." Gilbert also escaped nearly a decade of a portion of Pastimes's tax liability by attributing 50 percent of the income tax to the Estate.

¶15 The court valued Lila's interest at the time of trial through the Estate's expert witness, Edward Kerins (Kerins). Kerins presented the only valuation of Pastimes's worth at the time of trial. Kerins based his estimate upon the equal interest that the Agreement vested in Lila and Gilbert. Pastimes's expert, Dave Johnson (Johnson), failed to provide an alternate valuation for the time of trial. Pastimes argued that it could supply an expert valuation of the worth of the company only at Lila's death. Pastimes had notice as of March 12, 2009, however, that the court would apply the present day valuation of the Estate's interest in Pastimes during the trial.

¶16    The two experts disagreed upon the amount present in Lila's and Gilbert's capital accounts. Kerins testified that Gilbert had received a distribution of $58,000 from his capital account, but Gilbert contended that he had taken that sum as a loan to repay to Pastimes at a later date. The District Court found that excluding the disputed $58,000, "the capital accounts of the two members were roughly equal." Johnson criticized Kerins's method of valuation, but failed to provide an alternate calculation.

¶17    The court divided Pastime's assets based upon each member's contributions up to the date of the Estate's filing of the lawsuit. The court valued Lila's interest in the business at the time of trial at $682,442. The court further determined that the indemnity clause in the Agreement supported an award of attorney fees and costs to the Estate. Pastimes later filed a brief regarding the claims for attorney fees and requested that the court reconsider its award to the Estate. The Estate filed a motion for award of attorney fees and costs. The court rejected Pastimes's objection to the costs in January 2011. The court awarded $272,974.80 in attorney fees and $9,481 in costs to the Estate in April 2011 after a hearing on the reasonableness of the award. The court imposed the ten percent statutory rate of interest on the judgment as set forth in § 25-9-205(1), MCA. Pastimes appeals.

STANDARD OF REVIEW

¶18    We review for clear error a district court's findings of fact. *AAA Constr. of Missoula, LLC v. Choice Land Corp.,* 2011 MT 262, ¶ 17, 362 Mont. 264, 264 P.3d 709. Clear error exists if substantial credible evidence does not support the findings of fact, if the district

court misapprehended the evidence's effect, or if we have a definite and firm conviction that the district court made a mistake. *AAA Constr.,* ¶ 17.

¶19 The interpretation of a contract presents a question of law. *Riehl v. Cambridge Ct. GF, LLC,* 2010 MT 28, ¶ 26, 355 Mont. 161, 226 P.3d 581. We review for correctness a court's conclusions of law. *Performance Mach. Co. v. Yellowstone Mt. Club, LLC,* 2007 MT 250, ¶ 12, 339 Mont. 259, 169 P.3d 394. We similarly review for correctness a district court's determination that legal authority exists to award attorney fees. *Hughes v. Ahlgren,* 2011 MT 189, ¶ 10, 361 Mont. 319, 258 P.3d 439.

## DISCUSSION

¶20 *Whether the District Court properly valued the Estate's interest at the date of trial rather than at the time of Lila's death.*

¶21 Pastimes urges us to apply the reasoning from *In Re Estate of Lucille B. Snyder*, 2007 MT 146, 337 Mont. 449, 162 P.3d 87, to the valuation issue. *Snyder* involved the dispute of a son and daughter over their mother's estate. The mother left her interest in the family drug store and property in Flathead County and Great Falls. *Snyder,* ¶ 6. The question arose as whether to value the property at the time of the mother's death or at the time of trial. *Snyder,* ¶¶ 11-13.

¶22 The Court determined that Lucille Snyder's clear intent was to value the property at the time of her death. *Snyder,* ¶ 37. *Snyder* interpreted provisions of Montana's probate code. Gilbert's appeal requires us to interpret the specific provisions of Montana law that govern limited liability companies when deciding how to value a limited liability company. Sections 35-8-101 et seq., MCA. The District Court had to divide Pastimes between its two

members. We must interpret the Agreement in accordance with the statutes that regulate limited liability companies. *Snyder*'s reasoning controls only to the extent that Montana's probate code mirrors Montana's code provisions regarding limited liability companies.

¶23 Pastimes points to Section 10.01(b) of the Agreement to support its claim that the District Court should have valued Lila's interest as of the date of her death. Pastimes argues that the business dissolved immediately and automatically upon Lila's death, pursuant to Section 10.01(b). Tim and Gilbert agree, however, that Gilbert voluntarily continued to operate Pastimes with the benefit of Lila's investment.

¶24 The Montana Limited Liability Company Act (Act) provides that a limited liability company winds up "at the time or upon the occurrence of events specified in writing in the articles of organization or operating agreement." Section 35-8-901(1)(a), MCA. "[A]t least two remaining members" of Pastimes did not remain upon Lila's death, as required by the Agreement. Pastimes automatically would have dissolved on November 1, 2000, the date of Lila's death, pursuant to the terms of the Agreement. The Agreement imposed a duty on Gilbert, as the only managing member of the LLC, to wind up the company. Gilbert opted not to wind up the business at that time. Gilbert and Tim instead voluntarily agreed that Gilbert would continue to operate the business until Pastimes realized a profit.

¶25 We agree with the District Court that the Agreement's dissolution provision does not apply due to the parties' decision to continue operation of the business. Although not fully articulated by the District Court, Gilbert's and Tim's agreement and Gilbert's continued operation of Pastimes constituted a fully executed oral agreement. Parties may alter a

written contract either through a contract in writing or through an executed oral agreement. Section 28-2-1602, MCA; *AAA Constr.*, ¶ 27.

¶26    The executed oral modification comports with Montana law and the Agreement itself. The Act provides that "a member that is an estate or is acting as a member by virtue of being a personal representative of an estate" dissociates from the limited liability company once the estate receives "the estate's entire rights to receive distributions from the company." Section 35-8-803(10), MCA. Thus, nothing in the Act worked an automatic dissociation of the Estate upon Lila's death. The Agreement similarly addresses the proper transfer of interest upon a member's death. Section 8.03 states that a member's legal representative "shall have all the rights of the [m]ember for the purpose of settling the [m]ember's estate. . . ."

¶27    An oral agreement is fully executed when the parties have performed its terms. *AAA Constr.,* ¶ 27. Gilbert did not liquidate Pastimes in 2001. The Estate, acting as a member of Pastimes, chose to forgo a payout in 2001 in order to wait for a potentially higher return on Lila's initial investment. Gilbert continued to manage Pastimes after Lila's death. The parties orally modified the dissolution provision of the Agreement.

¶28    We agree that the District Court properly valued the Estate's interest in Pastimes at the time of trial rather than at the time of Lila's death. Gilbert does not challenge specifically the District Court's findings regarding the rough equalization of the capital accounts held by Gilbert and the Estate at the time of trial. Our review of the record reveals substantial evidence to support the District Court's finding.

¶29    *Whether the District Court properly determined the interest rate.*

¶30 The District Court applied the statutory rate of 10 percent per annum, as provided for in § 25-9-205(1), MCA, to the judgment from the Estate. Pastimes argues that § 25-9-205(1), MCA, applies only when the contract fails to specify an interest rate. Section 10.04(a) of the Agreement specifies that interest will "accrue at the minimum applicable federal rate under (IRC Section 483)."

¶31 Pastimes argues that pursuant to the Internal Revenue Code, the interest rate stood as 6.45 percent at the time of Lila's death and 2.96 percent as of February 2009. Tim counters that the members intended to apply that interest rate only when valuing a member's interest in a situation where at least two members of Pastimes remained. The court concluded in its valuation determination, however, that the Estate essentially served as a member of Pastimes until the time of trial. We have determined that the parties orally modified one part of the Agreement with respect to automatic dissociation upon death of a member. The oral modification applies only to Section 10.01(b) of the Agreement. ¶ 27.

¶32 The remainder of the Agreement stands as written. Section 3.04 of the Agreement specifies that members earn zero interest on their capital accounts. Kerins included the capital accounts in the total valuation of Pastimes. The court imposed interest on the entire judgment. We agree with Pastimes that § 25-9-205(2), MCA, dictates that the interest rate must follow the Internal Revenue Code as specified in Section 10.04(a) of the Agreement. This interest rate also must apply only to the portion of the valuation that does not represent a part of the members' capital accounts.

¶33 *Whether the District Court properly relied upon the indemnification provision to award attorneys fees and costs to the Estate.*

¶34     Montana generally does not allow the award of attorney fees absent statutory or contractual authority. *Mungas v. Great Falls Clinic, LLP*, 2009 MT 426, ¶ 43, 354 Mont. 50, 221 P.3d 1230. The Agreement contains no specific provisions regarding attorney fees. The District Court instead relied upon Section 6.09(a) of the Agreement, which requires Pastimes to indemnify members who are parties to a lawsuit, to support an award of attorney fees and costs to the Estate.

¶35     Section 6.09(a) provides that "the Company shall indemnify, defend, and hold harmless any person . . . by reason of any acts, omissions or alleged acts or omissions arising out of the Indemnified Party's activities as a Member, on behalf of the Company or in furtherance of the interests of the company. . . ." We agree with Pastimes that this indemnification provision fails to support an award of attorney fees to the Estate. Pastimes filed the first complaint. Tim filed a counterclaim. Tim did not act "on behalf of" or "in furtherance of the interests" of Pastimes. The District Court improperly relied upon the indemnification clause in Section 6.09(a) to support an award of attorney fees to the Estate.

¶36     A separate section of the Act governs attorney fees in the absence of a specific contractual provision. A court may award attorney fees if a party "acted arbitrarily, vexatiously, or not in good faith." Section 35-8-809(4), MCA. Nothing in the record indicates that Pastimes acted arbitrarily, vexatiously, or in bad faith. The parties could not agree in 2001 on how to value Lila's interest at the time of Lila's death. The parties still had not reached an agreement on the valuation by the time that Pastimes filed this action in 2005. Again, nothing in the record indicates that Pastimes failed to negotiate in good faith to resolve this dispute. Section 35-8-809(4), MCA, could not support an award of attorney fees

11

under these circumstances. Each party must pay its own attorney fees. We need not address the reasonableness of the court's fee award. The District Court improperly interpreted the indemnification provision to support an award of attorney fees and costs to the Estate.

¶37 This same reasoning applies to the District Court's award of costs to the Estate. The District Court relied upon the same indemnification provision to support its award of costs to the Estate. The Estate must rely upon its statutory right to the costs of litigation in the absence of a provision in the Agreement.

¶38 A party must file a memorandum for costs within five days after notice of the court's decision. Section 25-10-501, MCA. A party who fails to timely file a memorandum of costs waives its right to receive an award of costs. *Doyle v. Clark*, 2011 MT 117, ¶ 40, 360 Mont. 450, 254 P.3d 570. The District Court issued its decision on August 23, 2010, that ordered Pastimes to pay Lila's share of the business as well as costs and attorney fees to the Estate. The Estate filed its request for costs on December 21, 2010, nearly four months after the deadline of August 30, 2010. Section 25-10-501, MCA. The District Court improperly awarded costs to the Estate.

¶39 We remand to the District Court for recalculation of the judgment and recalculation of the interest pursuant to this Opinion.

/S/ BRIAN MORRIS

We Concur:

/S/ MICHAEL E WHEAT
/S/ JIM RICE

12

/S/ BETH BAKER
/S/ PATRICIA COTTER