FILED

November 25 2014

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 13-0597

DA 13-0597

IN THE SUPREME COURT OF THE STATE OF MONTANA

2014 MT 307

DIANNE PETERSON-TUELL,

      Plaintiff and Appellant,

    v.

FIRST STUDENT TRANSPORTATION, LLC,
a Delaware Corporation,

      Defendant, Appellee and Cross-Appellant.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DV 11-1701
Honorable Russell C. Fagg, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          J. Gregory Tomicich; Tomicich Law Office, P.C.; Billings, Montana

      For Appellee:

          Gerry Fagan, George T. Kimmet; Moulton Bellingham, P.C.; Billings,
Montana

Submitted on Briefs:  October 8, 2014
Decided:  November 25, 2014

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1      Dianne Peterson-Tuell (Peterson-Tuell) appeals from the judgment entered by the Thirteenth Judicial District Court, Yellowstone County, following a trial in which evidence about her prior traumatic experiences was admitted and her challenges for cause of two jurors were denied. First Student Transportation, LLC (First Student) cross-appeals from the denial of its bill of costs as untimely. We affirm, restating the issues on appeal as follows:

¶2      *1. Did the District Court err by admitting evidence of Peterson-Tuell's prior trauma and depression?*

¶3      *2. Did the District Court err by denying Peterson-Tuell's challenges for cause?*

¶4      *3. Did the District Court err by denying First Student's bill of costs as untimely under § 25-10-501, MCA?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶5      On December 21, 2009, Peterson-Tuell was stopped in her vehicle at an intersection in Billings. A school bus owned by First Student was stopped behind Peterson-Tuell and rear-ended her vehicle by pulling forward when the light turned green. The impact pushed Peterson-Tuell's vehicle into the car in front of her, causing minor damage to both vehicles.

¶6      Peterson-Tuell exhibited no injuries at the scene. Several hours later, Peterson-Tuell was examined at a same-day medical care facility. During the examination, Peterson-Tuell reported no injuries and showed no signs of difficulty in speaking, thinking, or concentrating. The treating physician's assistant noted that

2

Peterson-Tuell had not hit her head during the accident, and described her as alert, oriented, and capable of making good eye contact. Two weeks later, Peterson-Tuell was examined by Dr. Lucinda Husby and no symptoms of brain trauma were reported or noted.

¶7 On January 25, 2010, Peterson-Tuell was evaluated by Dr. Dennis O'Brien, a neurologist. Peterson-Tuell did not indicate that she was suffering cognitive difficulties, and no such symptoms were observed by Dr. O'Brien. It was only during a subsequent appointment with Dr. O'Brien on February 24, 2010, that Peterson-Tuell first reported she was experiencing cognitive problems. During that visit, Peterson-Tuell stated she had been suffering memory issues and difficulty concentrating since the accident.

¶8 Peterson-Tuell filed suit against First Student on December 13, 2011, claiming negligence. Peterson-Tuell alleged the accident had caused a traumatic brain injury and prevented her from securing employment. First Student admitted liability for the accident, leaving the issues of causation and damages to be decided at trial. Peterson-Tuell sought $3,000,000 in damages, and First Student made an offer of judgment in the amount of $95,000. The jury awarded $65,000 to Peterson-Tuell. Within five business days of the verdict, First Student filed a bill of costs in the amount of $4,001. The bill was rejected by the District Court, which concluded that § 25-10-501, MCA, required a bill of costs to be filed within five calendar days. Both parties appeal.

3

## STANDARD OF REVIEW

¶9 District Courts are vested with broad discretion in controlling the admission of evidence at trial. *Seltzer v. Morton*, 2007 MT 62, ¶ 65, 336 Mont. 225, 154 P.3d 561. When reviewing a district court's evidentiary ruling, this Court determines only whether a lower court abused its discretion. *Seltzer*, ¶ 65. Abuse of discretion occurs when a district court acts arbitrarily without conscientious judgment or exceeds the bounds of reason. *Lopez v. Josephson*, 2001 MT 133, ¶ 14, 305 Mont. 446, 30 P.3d 326. We review a district court's refusal to grant a challenge for cause for abuse of discretion. *Harris v. Hanson*, 2009 MT 13, ¶ 17, 349 Mont. 29, 201 P.3d 151. A district court's interpretation and application of a statute is a conclusion of law which we review for correctness. *Mont. State Fund v. Simms*, 2012 MT 22, ¶ 15, 364 Mont. 14, 270 P.3d 64.

## DISCUSSION

¶10 *1. Did the District Court err by admitting evidence of Peterson-Tuell's prior trauma and depression?*

¶11 At trial, Peterson-Tuell's treatment records and the medical opinions of her personal medical providers were introduced into evidence. First Student used this evidence to argue that Peterson-Tuell's symptoms were psychosomatic and attributable to a long history of anxiety and depression, not the accident. Two of Peterson-Tuell's physicians opined that her anxiety and depression were related to feelings of guilt that she experienced as a result of the sexual abuse of her daughter some 20 years ago.

¶12 Prior to trial, Peterson-Tuell filed a motion in limine that challenged unspecified "psychological theories" she expected to be offered at trial by First Student. The only

evidence referenced in the motion was the expected testimony of a medical expert witness for First Student, arguing that the expert "reaches back 30 years into the sexual abuse of one of the Plaintiff's children without showing any causal link at all between that and Plaintiff's symptoms . . . . Defendant's [sic] should not be allowed to speculate and provide this court with a retroactive diagnosis." The motion did not object to the admission of Peterson-Tuell's medical records or testimony from her physicians, and did not seek exclusion of the evidence as prejudicial under M. R. Evid. 403.

¶13 The District Court made no ruling on the motion in limine until the morning of the trial. In chambers, the court denied the motion after the following exchange:

> [Plaintiff]: Well, there's really several issues there, your Honor, and I'm tempted to just say, forget it, but the reason that the motion was written, it's one thing to say that the Plaintiff has psychosomatic complaints or that she's depressed. It's another thing . . . to reach back twenty-five years and say that some trauma had anything to do with this bus wreck . . . .
>
> .  .  .
>
> COURT: Isn't that kind of what this case is all about? I mean, liability is admitted; the issue is damages. The Plaintiff is stating, or claiming, that she has mild brain trauma and the Defendants think that (a) that isn't true, and if it is true, it could be from some other incident from the past, does that basically sum it up?
>
> .  .  .
>
> [Plaintiff]: [W]hat Dr. Husby's saying is a little more complicated than that. She says that pain causes depression, depression intensifies pain, and that it's a vicious cycle.
>
> COURT: Okay. I'm going to deny the motion. If you think the Defendants are going too far on their theory, just make an objection.

Again, no objection was made to the admission of Peterson-Tuell's medical records or the conclusions of her treating physicians, nor was a concern raised about any evidence being unduly prejudicial.

¶14    Although not specifying a rule, Peterson-Tuell's objections sounded in relevance and in the causation requirement that a party establish a "medical connection" foundation for evidence, as held in *Kimes v. Herrin*, 217 Mont. 330, 705 P.2d 108 (1985), on which Peterson-Tuell relies.  In *Kimes*, a two year-old child injured in an automobile accident began experiencing symptoms of listlessness, sleepiness, and staring several years later. *Kimes*, 217 Mont. at 331-332, 705 P.2d at 109-110.  A suit was brought alleging the child had suffered a brain trauma, against which the Defendant offered evidence of family fighting and an alcoholic environment to prove an alternate cause of the child's symptoms.  *Kimes*, 217 Mont. at 332-333, 705 P.2d at 110.  Experts opined that the described home environment could cause the exhibited symptoms, but failed to establish "a medical connection between poor home environment and the [child's] symptoms." *Kimes*, 217 Mont. at 333, 705 P.2d at 110.  While noting that the evidence was relevant, we nonetheless held that, without the requisite causal connection, the evidence should have been excluded under M. R. Evid. 403, "because the probative value was substantially outweighed by the danger of undue prejudice."  *Kimes*, 217 Mont. at 333, 705 P.2d at 110.  Peterson-Tuell also cites *Henricksen v. State*, 2004 MT 20, ¶ 63, 319 Mont. 307, 84 P.3d 38 ("Litigants must establish a causal connection more probable than not connecting any possible cause of a plaintiff's injuries before alternate causation

6

testimony is allowed at trial; mere speculation is not sufficient and not admissible.") (citation omitted).

¶15    However, the evidence here was neither speculative nor lacking a causal connection to Peterson-Tuell's symptoms, as in *Kimes* and *Henricksen*. The alternate causation evidence was provided by Peterson-Tuell's own treatment records and by the testimony of her physicians, including their opinion that her symptoms arose from her prior anxiety and depression, which was essentially admitted without objection. Dr. Husby, who treated Peterson-Tuell for depression, anxiety, and pain for a decade prior to the accident, concluded that, while her post-accident complaints of cognitive problems and headaches "may have been set off by the rear-end accident," she was nonetheless "beyond that" and was experiencing a "psychosomatic overlay" caused by her depression. Dr. Quenemoen concluded that Peterson-Tuell's memory complaints were likely "secondary" to other causes, such as depression and anxiety, noting that she had exhibited "excessive responses to physical problems in the past." Dr. Bredehoft determined Peterson-Tuell's cognitive functions to be "at least in the average range" and attributed her current cognitive problems to fatigue, pain, or anxiety, likely linked to feelings of guilt stemming from the molestation of her daughter. Dr. Schabacker concluded the abuse of Peterson-Tuell's daughter was a "life-defining factor" causing her "substantial trouble." Dr. Gumm opined that Peterson-Tuell's cognitive complaints were likely attributable to a "mood disorder, not otherwise specified," such as depression and anxiety. Finally, Dr. Stuart Hall, a neuropsychologist retained by First Student to

7

evaluate Peterson-Tuell, testified he found nothing in Peterson-Tuell's treatment records consistent with a traumatic brain injury following the accident, and added that delayed symptoms of cognitive impairment would be inconsistent with brain trauma, noting "it just doesn't happen that way."

¶16 As in *Kimes*, the evidence here had a tendency to make the alleged cause of Peterson-Tuell's symptoms more or less probable, and was therefore relevant under M. R. Evid. 401. However, unlike *Kimes*, the evidence went beyond theoretical musing and medically connected Peterson-Tuell's symptoms to something other than the accident. *Kimes*, 217 Mont. at 333, 705 P.2d at 110. As the District Court correctly recognized, this case was "all about" causation, and this evidence was relevant and admissible to that issue.

¶17 On appeal, Peterson-Tuell has changed her theory, now arguing primarily that, even if relevant, the evidence should have been excluded as unduly prejudicial under M. R. Evid. 403, particularly, those questions that referenced her daughter's sexual abuse. She highlights a direct reference to that abuse during First Student's cross-examination of another of her daughters:

> [Defendant]: It' my understanding, and I'm—I don't want to be rude about this, but it's my understanding when you were a child, your dad, your biological dad actually raped your daughter—or, your sister.
>
> [Plaintiff]: Objection, your Honor. It's not relevant.
>
> COURT: What is the relevance, Mr. Fagan?
>
> [Defendant]: The relevance is to the trauma and to the crisis that she talked about that her mom's endured about depression.

8

[Plaintiff]: Twenty five years ago.

COURT: Overruled, I'll let you go into it for a moment.[1]

Acknowledging she should have done more "to exclude much 'psychological evidence' post accident, to limit the Defendant's theory," Peterson-Tuell argues that, nonetheless, her motion in limine was sufficient to preserve this prejudice objection for appeal.

¶18 A motion in limine can serve as an important strategic tool to preserve objections for appeal. *State v. Crider*, 2014 MT 139, ¶ 19, 375 Mont. 187, 328 P.3d 612. We have held, however, that when utilizing a motion in limine, a party must "make the basis for his objection clear to the district court" to preserve the issue for appeal. *Crider*, ¶ 20. A motion in limine must be sufficiently specific as to the basis for the objection so that the District Court is alerted to the issue and can rule upon it. *Crider*, ¶ 20 (citations omitted).

¶19 A Rule 403 objection limiting inquiry into the difficult subject of her daughter's sexual abuse may have been well taken, but, as noted above, Peterson-Tuell did not make that objection in the District Court. In her motion in limine and in her trial objections, she argued only that the evidence was not relevant and lacked a causal connection. "[W]e do not address a party's change in legal theory on appeal nor do we render a district court's decision incorrect when it was not given an opportunity to correct itself." *Newman v. Scottsdale Ins. Co.*, 2013 MT 125, ¶ 84, 370 Mont. 133, 301 P.3d 348. We conclude that the District Court did not abuse its discretion under these circumstances.

---

[1] Following this initial objection, Peterson-Tuell made one other objection to this line of questioning, again arguing the absence of a causal connection between the abuse of her daughter and her current symptoms.

9

¶20    *2. Did the District Court err by denying Peterson-Tuell's challenges for cause?*

¶21    A juror may be challenged for cause when the juror has evinced "enmity against or bias in favor of either party." Section 25-7-223(7), MCA. Examination of potential jurors during voir dire is intended to evaluate their qualifications to serve in a case contemplating specific issues. *Abernathy v. Eline Oil Field Services*, 200 Mont. 205, 214, 650 P.2d 772, 777 (1982). The determination of whether a juror should be allowed to serve must be "left largely to the sound discretion of the trial court" because the court has the advantage of observing his or her demeanor. *Abernathy*, 200 Mont. at 214, 650 P.2d at 777 (citations omitted). A court's ruling should not be set aside unless error is manifest or there is a clear abuse of discretion. *Abernathy*, 200 Mont. at 214, 650 P.2d at 777. A court abuses its discretion if it fails to excuse a prospective juror whose actual bias is discovered during voir dire. *Harris v. Hanson*, 2009 MT 13, ¶ 22, 349 Mont. 29, 201 P.3d 151.

¶22    Peterson-Tuell argues the District Court abused its discretion by failing to dismiss two jurors she challenged for cause, forcing her to use two peremptory challenges to remove those jurors and depriving her of those challenges to dismiss other jurors. The first, Janet Cline, stated during Peterson-Tuell's voir dire that she had grown up in the same neighborhood as First Student's counsel and attended high school with him, although she had not been in contact with him since that time. First Student's counsel asked Cline if their prior relationship biased her in his favor, to which she replied: "No— its been years . . . ." Peterson-Tuell challenged Cline for cause and the District Court

overruled the objection without prejudice to a further demonstration that Cline was biased. Counsel for Peterson-Tuell withdrew from questioning Cline, stating he would return to her, but did not do so.

¶23 Cline also stated during First Student's questioning that she felt bus drivers were "saints," because driving children around is a "nerve-wracking job." After First Student passed the jury for cause, Peterson-Tuell was allowed an additional opportunity to question the panel and she again challenged Cline for cause, arguing that her comment about bus drivers demonstrated a bias in favor of First Student. In response to Peterson-Tuell's renewed objection, Cline offered to clarify her earlier comment about bus drivers being "saints," agreeing with First Student that it was a strong term to use and that she merely meant to say bus drivers are "patient." The court denied the challenge because Cline did not evince an indication that she would be unfair or biased.

¶24 The second juror at issue was Patrick Lawler. During First Student's voir dire, Lawler stated that if there was no evidence of causation, he would "say [Peterson-Tuell] was just claiming she had an injury" and would not give her the benefit of the doubt. First Student asked Lawler whether he would consider the proof offered by Peterson-Tuell when making his decision, and he stated that he would. After Peterson-Tuell challenged Lawler, First Student objected, arguing that Lawler had "said that he would weigh the evidence and apply the burden of proof." The District Court denied the challenge.

¶25 On appeal, Peterson-Tuell argues Cline's bias was "obvious" and characterizes Lawler as "openly hostile to the plaintiff's case." First Student answers that neither juror expressed enmity or bias, as required under § 25-7-223(7), MCA. We agree. Cline stated her relationship with First Student's counsel would not affect her decision. Additionally, as clarified, Cline's comments about bus drivers did not demonstrate bias. Similarly, Lawler stated during voir dire that he would make a judgment about Peterson-Tuell's claim only after considering her evidence. Lawler's statement that he would not find in Peterson-Tuell's favor if she failed to offer evidence of causality was essentially a lay person's restatement of the burden of proof.

¶26 Peterson-Tuell did not demonstrate actual bias on the part of either challenged juror. As such, neither the District Court's denial of the challenge to Cline nor the challenge to Lawler constituted an abuse of discretion.

¶27 *3. Did the District Court err by denying First Student's bill of costs as untimely under § 25-10-501, MCA?*

¶28 First Student cross appeals the denial of its costs. Prior to trial, First Student made an offer of judgment to Peterson-Tuell in the amount of $95,000, which was declined. M. R. Civ. P. 68(d) provides that, when an offer of judgment is made and not accepted, the "offeree must pay the costs incurred after the offer was made" if the judgment obtained is less favorable than the offer. Additionally, § 25-10-501, MCA, states that a "party in whose favor judgment is rendered and who claims the party's costs shall deliver to the clerk and serve upon the adverse party, within 5 days after the verdict or notice of the decision . . . ."

12

¶29 Peterson-Tuell and First Student both filed a bill of costs following the verdict. The District Court ruled that the parties had failed to timely file their bills, and denied them both. The court reasoned that First Student was entitled to its incurred costs following rejection of the offer of judgment by Peterson-Tuell, as her recovery was $30,000 less than the offer, M. R. Civ. P. 68(d), but further held that First Student had failed to comply with the time requirements of § 25-10-501, MCA, and denied the request.

¶30 First Student argues the District Court erred, citing *Doyle v. Clark*, 2011 MT 117, ¶ 41, 360 Mont. 450, 254 P.3d 570. In *Doyle*, this Court held "that the five-day period provided for in § 25-10-50, MCA, is five *business* days . . . ." (Emphasis in original.) First Student offers that the District Court erroneously concluded that an amendment to M. R. Civ. P. 6 operated to change our holding in *Doyle*. The amendment was enacted in 2011 as part of a comprehensive revision to the Montana Rules of Civil Procedure adopted by this Court, effective October 1, 2011. *In re Mont. R. Civ. Proc.*, No. AF 07-157 (Mont. Apr. 26, 2011). Under the revised rules, M. R. Civ. P. 6 was amended to read that intermediate Saturdays, Sundays, and legal holidays are counted when calculating time under the rules. Prior to the amendment, Rule 6 stated that "[w]hen the period of time prescribed or allowed is less than 11 days, intermediate Saturdays, Sundays, and holidays shall be excluded in the computation . . . ."

¶31 First Student argues that the revision to Rule 6 had no effect on the holding in *Doyle*, and the rule of that case remains valid. However, *Doyle* was decided prior to the

13

implementation of the amendment. Section 25-10-501, MCA, does not explicitly state how the five days should be calculated. When the Rule 6 was amended, it became the governing rule that "in computing any time period specified in [the] rules, or court order, or *in any statute that does not specify a method of computing time*." (Emphasis added.) In short, the holding in *Doyle* was nullified by the rule revision. The District Court correctly interpreted the statute and the rule.

¶32    Affirmed.


                                        /S/ JIM RICE

We concur:

/S/ MIKE McGRATH
/S/ BETH BAKER
/S/ MICHAEL E WHEAT
/S/ LAURIE McKINNON

14