

DA 06-0347

IN THE SUPREME COURT OF THE STATE OF MONTANA

2008 MT 116

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

JOHN WILLIAM ANDERSON,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Ninth Judicial District,
In and For the County of Toole, Cause No. DC-2005-019
Honorable Marc G. Buyske, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

      Jeremy S. Yellin, Attorney at Law, Havre, Montana

      For Appellee:

      Hon. Mike McGrath, Montana Attorney General, John Paulson, Assistant
Attorney General, Helena, Montana

      Merle Raph, Toole County Attorney, Shelby, Montana

Submitted on Briefs:  September 6, 2007

Decided:  April 9, 2008

Filed:

_____
Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1 Appellant John William Anderson appeals his felony conviction in the Ninth Judicial District, Toole County, for driving under the influence of alcohol, in violation of § 61-8-401, MCA. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2 On April 28, 2005, around 2:00 a.m., Toole County Sheriff Deputy Mark Pattison was on routine patrol in Shelby, Montana, when he saw a teal Dodge pickup pull out from the Montana Club on Main Street in Shelby. The pickup did not have its lights on. Deputy Pattison followed the pickup as it proceeded down Main Street and turned north onto Division Street. The pickup stopped for a stop sign on Division Street, turning east onto Front Street. As it did so, another vehicle flashed its headlights at the pickup, but the pickup did not respond. Deputy Pattison then activated his emergency lights. The pickup weaved in its lane, but did not immediately stop, continuing to the intersection of Front Street and Montana Avenue. At that point, the pickup stopped for the stop sign at the intersection and remained there without moving. Deputy Pattison then exited his vehicle and approached the driver's side of the pickup.

¶3 Deputy Pattison spoke to the driver, appellant Anderson. As he requested identification, registration, and proof of insurance, he detected an odor of intoxicating substances emanating from Anderson, and noticed that his eyes were red and his speech was slurred. Anderson told Deputy Pattison that he had had a couple of beers while playing poker at the Montana Club. Deputy Pattison then asked Anderson to submit to field sobriety tests. He administered the Horizontal Gaze Nystagmus test, which

2

indicated that Anderson was intoxicated or impaired. Anderson was then asked to recite the alphabet, but was unable to recite it in correct sequence past the letter "C." Anderson was asked to then perform the one leg stand test, which he promptly failed.

¶4     Anderson was arrested and transported to the Toole County Public Safety Facility. Deputy Pattison read Anderson the Implied Consent Form and asked him if he would submit to a breath test. Anderson refused to do so.

¶5     On May 24, 2005, the Toole County Attorney charged Anderson by Amended Information with one count of driving under the influence of alcohol (DUI), sixth offense, in violation of § 61-8-401, MCA, and for driving without headlights when required, a misdemeanor violation of § 61-9-201, MCA. A jury trial was scheduled for February 2, 2006.

¶6     Prior to and during trial, Anderson objected to two proposed jury instructions related to his refusal to submit to a breath test. Those two jury instructions, Nos. 13 and 14, read as follows:

> **Inference From Refusal**
> You may infer from the refusal to submit to a blood test or breath test for the presence of alcohol that the Defendant was under the influence of alcohol.
>
> **Refusal Of A Breath Or Physical Test**
> If a person refused to submit to a physical test or a test of their breath, such refusal is admissible evidence. Evidence of refusal is simply another factor to be considered along with other relevant, competent evidence in determining whether a person is guilty or not.

3

¶7    In the course of settling the jury instructions, the District Court incorporated aspects of proposed instructions Nos. 13 and 14 into jury instruction No. 9. Jury instruction No. 9 reads as follows:

> You may infer from the refusal to submit to a blood test or breath test for the presence of alcohol that the Defendant was under the influence of alcohol. This inference is simply another factor to be considered along with other evidence admitted at this trial in determining whether the Defendant is guilty or not. *This inference may be rebutted by other evidence admitted at this trial.*

(Emphasis added.)

¶8    The statute from which these instructions derive, § 61-8-404(2), MCA, reads as follows:

> If the person under arrest refused to submit to one or more tests as provided in this section, proof of refusal is admissible in any criminal action or proceeding arising out of acts alleged to have been committed while the person was driving or in actual physical control of a vehicle upon the ways of this state open to the public, while under the influence of alcohol, drugs, or a combination of alcohol and drugs. *The trier of fact may infer from the refusal that the person was under the influence. The inference is rebuttable.*

(Emphasis added.)

¶9    Anderson objected to instruction No. 9 on the grounds that it did not adequately track the language in § 61-8-404(2), MCA, and that its wording unconstitutionally shifted the burden of proof to him. The District Court overruled these objections, and instruction No. 9 was ultimately read to the jury. On February 2, 2006, Anderson was tried and convicted of both charges.

¶10    Anderson had been previously convicted of five offenses related to driving while intoxicated or with an excessive alcohol concentration. Two of these offenses were DUI

4

convictions on April 24, 1989, and November 8, 2000. The remaining three convictions were for operating a motor vehicle with a BAC of "0.08" or greater (BAC conviction), in violation of § 61-8-406, MCA. The dates for these BAC convictions were September 30, 1992, February 7, 1994, and March 21, 2000. The State sought to introduce Anderson's prior convictions for sentencing enhancement purposes. Anderson did not challenge the consideration of the November 8, 2000 DUI conviction or the March 21, 2000 BAC conviction. However, Anderson did argue that the April 24, 1989 DUI and the February 7, 1994 BAC convictions had to be expunged because he did not re-offend within the five-year expungement period set forth in the statutes applicable to each charge, § 61-8-714(5), MCA (1987), and § 61-8-722(6), MCA (1993), respectively. The State ultimately agreed with Anderson and the District Court did not consider these two charges for sentencing enhancement purposes.

¶11 Anderson also argued that his September 30, 1992 BAC conviction could not be considered for sentencing enhancement purposes because to do so would violate the prohibition on ex post facto laws, as well as due process and notice requirements. In 1995 the Legislature amended the DUI statutes making fourth and subsequent convictions for DUI a felony. *State v. Brander*, 280 Mont. 148, 150-151, 930 P.2d 31, 33 (1996) (discussing 1995 legislative amendments to the DUI statutes and § 61-8-714(4), MCA (1995)). At the time of Anderson's BAC conviction in 1992, third and subsequent convictions for DUI rose only to the level of misdemeanors. Section 61-8-714(3), MCA (1991). After the 1995 amendments, however, a previous BAC conviction could lead to a DUI being treated as a felony if the inclusion of the BAC conviction meant the current

5

DUI conviction was a fourth or subsequent offense. Section 61-8-714(4) and (7), MCA (1995).[1] Anderson argued that the 1995 amendment to the DUI statutes made the lesser offense of a BAC conviction the functional equivalent of a DUI offense—a more severe charge in terms of penalty and sentencing. Anderson argued that his September 1992 BAC conviction, occurring as it did before the 1995 legislative amendment, should not be considered for sentencing enhancement purposes in his current conviction.

¶12  The District Court disagreed with Anderson and considered his September 30, 1992, and March 21, 2000 BAC convictions and his November 8, 2000 DUI conviction for sentencing enhancement purposes. Because Anderson's current DUI was his fourth offense pursuant to the use of prior convictions under § 61-8-734, MCA, this current DUI was treated as a felony pursuant to § 61-8-731, MCA. As a result, Anderson was sentenced to the Department of Corrections for thirteen months to complete a residential alcohol treatment program, and given a five-year sentence, which was suspended upon compliance with certain terms. Anderson also had his license suspended and was ordered to pay various fines.

¶13  Anderson now timely appeals his conviction in the District Court.

## ISSUES

¶14  We state the issues on appeal as follows:

¶15  **Issue One:** Did the District Court unconstitutionally violate Anderson's due process rights under Article II, Section 17 of the Montana Constitution and the

---

[1] The statutes describing the use of prior convictions in calculating fourth and subsequent DUI offenses are now at §§ 61-8-731(1), and 734(1), MCA.

Fourteenth Amendment to the United States Constitution by allowing instruction No. 9 to be read to the jury?

¶16 **Issue Two:** Did District Court violate the prohibition on ex post facto laws in Article I, Section 10 of the United States Constitution and Article II, Section 31 of the Montana Constitution by considering Anderson's September 30, 1992 BAC conviction for sentencing enhancement purposes in this case?

## STANDARD OF REVIEW

¶17 In criminal cases, we review jury instructions to determine if "the instructions as a whole fully and fairly instruct the jury on the applicable law." *State v. Hausauer*, 2006 MT 336, ¶ 11, 335 Mont. 137, ¶ 11, 149 P.3d 895, ¶ 11. "A district court has broad discretion in formulating jury instructions, and our standard of review is whether the court abused that discretion." *Hausauer*, ¶ 11. Jury instructions that impermissibly shift the burden of proof to the defendant may constitute a violation of due process. *State v. McCaslin*, 2004 MT 212, ¶ 24, 322 Mont. 350, ¶ 24, 96 P.3d 722, ¶ 24 (recognizing that "jury instructions that shift to the defendant the burden of proof on a requisite element of mental state violate due process."). "Because the issue of whether a defendant's due process rights were violated is a question of law, we review the district court's conclusion to determine whether its interpretation of the law was correct." *McCaslin*, ¶ 14.

¶18 We review a criminal sentence for legality only, and our consideration focuses on whether the sentence is within statutory parameters. *Kills On Top v. State*, 2000 MT 340, ¶ 65, 303 Mont. 164, ¶ 65, 15 P.3d 422, ¶ 65. Our review of whether the ex post facto clauses of the Montana and United States Constitutions are implicated in a criminal case

7

is plenary, meaning "we simply determine whether the District Court's interpretation of the law is correct." *Brander*, 280 Mont. at 150-151, 930 P.2d at 33.

**DISCUSSION**

¶19 **Issue One:** *Did the District Court unconstitutionally violate Anderson's due process rights under Article II, Section 17 of the Montana Constitution and the Fourteenth Amendment to the United States Constitution by allowing instruction No. 9 to be read to the jury?*

¶20 Anderson maintains the District Court violated his due process rights by allowing instruction No. 9 to be read to the jury. Anderson specifically objects to the phrase "[t]his inference may be rebutted by other evidence admitted at this trial . . ." as contained in instruction No. 9. See ¶ 7. Anderson asserts that the only reasonable meaning of this particular phrase is that "the accused must present evidence at the trial if he is to overcome the evidence of guilt . . . ." Anderson maintains the District Court violated his due process rights under the Fourteenth Amendment to the United States Constitution and Article II, Section 17 of the Montana Constitution by implying to the jury through instruction No. 9 that he was required to present evidence rebutting his refusal to submit to a breath test. Anderson acknowledges that we rejected a similar challenge to a jury instruction in *City of Great Falls v. Morris*, 2006 MT 93, 332 Mont. 85, 134 P.3d 692, but asserts that *Morris* is distinguishable and does not undermine his argument.

¶21 The State urges us to affirm the District Court. The State asserts that in *Morris* we rejected a burden-shifting/due process argument nearly identical to the one Anderson advances here. The State further points out that in instruction No. 1 the District Court

instructed the jury that Anderson was presumed innocent, that such a presumption remained throughout the trial and would not be overcome unless the State proved Anderson's guilt beyond a reasonable doubt and, further, that Anderson was not required to prove his innocence or present any evidence in this regard. The relevant portion of instruction No. 1 reads as follows:

> The Defendant is presumed to be innocent of the charge against him. This presumption remains with him throughout every stage of the trial and during your deliberations on the verdict. It is not overcome unless from all the evidence in the case you are convinced beyond a reasonable doubt that the Defendant is guilty. The Defendant is not required to prove his innocence or present any evidence.

¶22 Thus, the State argues, the instructions, when considered as a whole, did not impermissibly shift the burden of proof to Anderson.

¶23 Further, the State maintains that instruction No. 9 itself appropriately tracks the language of the statute upon which it is based, § 61-8-404(2), MCA. See ¶ 8. The State concedes that instruction No. 9 did not reproduce precisely language of the statute, but asserts that under *State v. Maloney*, 2003 MT 288, ¶ 27, 318 Mont. 66, ¶ 27, 78 P.3d 1214, ¶ 27, the District Court has discretion to modify jury instructions "so long as the modification does not alter the meaning of the statute." The State asserts that the change in language between instruction No. 9 and the statutory language "presents a distinction without a difference." The State argues that stating that an inference or presumption is "rebuttable" is simply a shorter way of stating that a presumption may be rebutted or overcome by other evidence. As the State asserts in its briefs, "[c]ontrary to Anderson's

9

assertion, the district court's rephrasing of the statute does not add any insinuation that the defendant must present evidence or prove his innocence."

¶24    We agree with the State and affirm the District Court.  We recently upheld the constitutionality of § 61-8-404, MCA, the statute upon which instruction No. 9 was patterned, in *State v. Michaud*, 2008 MT 88, ___ Mont. ___, ___ P.3d ___.  In *Michaud*, we rejected the notion that the rebuttable inference in § 61-8-404(2), MCA, (See ¶ 8), violates a defendant's due process rights by impermissibly shifting the burden of proof against him.  *Michaud*, ¶ 51.  Moreover, in reaching our decision in *Michaud*, we relied upon, and affirmed, our prior decision in *Morris* and its analysis of the constitutionality of jury instructions patterned on § 61-8-404, MCA.  See *Michaud*, ¶¶ 48-50 (discussing *Morris*).

¶25    In *Morris*, we noted that we do not analyze singular jury instructions in a "vacuum," but instead analyze " 'the potentially offending words . . . in the context of the charge as a whole.  Other instructions might explain the particular infirm language to the extent that a reasonable juror could not have considered the charge to have created an unconstitutional presumption.' "  *Morris*, ¶ 17 (quoting *State v. Leverett*, 245 Mont. 124, 127, 799 P.2d 119, 120-21 (1990)).  Instruction No. 9, when viewed in context with the other jury instructions, did not unconstitutionally shift the burden of proof to Anderson.  Even if a juror somehow construed the phrase "may be rebutted" to shift the burden of proof to Anderson, instruction No. 1 mitigated sufficiently any such inference of unconstitutional burden-shifting in light of the crime with which Anderson was charged and the State's burden of proof in securing a conviction.  Instruction No. 1 made it

unmistakably clear that Anderson was innocent until proven guilty beyond a reasonable doubt and that he was not required to present any evidence at trial. *See Michaud*, ¶ 50 (citing *Morris*, ¶¶ 15, 18) (noting that jury instructions in *Morris* upheld as constitutional when they properly explained the elements of the offense, the State's burden of proof, and defendant's presumption of innocence).

¶26 Moreover, "an instruction in a criminal case must contain an explanation of the crime, [but] it need not contain the exact statutory language." *Maloney*, ¶ 27. Under this standard, instruction No. 9 adequately tracked the language of the statute upon which it is based. See ¶¶ 7-9. According to the *American Heritage Dictionary*, the suffix "-able" means the following: "(1) Susceptible, capable or worthy of a specified action: *debatable*. (2) Inclined or given to a specified state or action: *changeable*." *Am. Heritage Dictionary of the English Language* 5 (4th ed. Houghton Mifflin Co. 2000). By instructing jurors that the inference "may be rebutted," the District Court simply informed the jurors that the presumption was capable of, susceptible, or given to rebuttal and that Anderson could rebut this presumption if he wanted to. It did not convey to the jurors that he was required to or had to rebut this presumption. Moreover, instruction No. 9 places the proper evidentiary weight on this rebuttable presumption by further stating that "[t]his inference is simply another factor to be considered along with other evidence admitted at this trial in determining whether the Defendant is guilty or not." See ¶ 7.

¶27 Accordingly, we conclude the District Court did not unconstitutionally shift the burden of proof to Anderson in reading instruction No. 9 to the jury.

11

¶28    **Issue Two:** *Did District Court violate the prohibition on ex post facto laws in Article I, Section 10 of the United States Constitution and Article II, Section 31 of the Montana Constitution by considering Anderson's September 30, 1992 BAC conviction for sentencing enhancement purposes in this case?*

¶29    Anderson argues the District Court erred in allowing his September 1992 BAC conviction to be considered for sentence enhancement purposes in this case. Anderson argues the 1995 amendments to the DUI statutes (See ¶ 11), unlawfully permitted his 1992 BAC conviction to elevate his current DUI conviction to a felony—a consequence which would not have been possible at the time of his 1992 BAC conviction. Thus, Anderson asserts, the 1995 legislative change to the DUI statutes is retrospective and clearly disadvantages him, thereby violating the prohibition on ex post facto laws as set forth in *State v. Leistiko*, 256 Mont. 32, 844 P.2d 97 (1992).

¶30    The State urges us to affirm the District Court and maintains that the 1995 legislative amendments to the DUI statutes do not violate the prohibition on ex post facto laws. The State asserts we have already addressed this precise issue in a line of cases beginning with *Brander*, holding that the 1995 amendments to the DUI statutes "do not constitute ex post facto legislation because they do not punish any previous conduct or increase the penalty for a prior conviction." The State maintains that in *Brander*, and subsequent case law thereunder, we have already concluded that the sanctions for a felony DUI apply only to the current offense, and that "the Legislature may chose to punish repetitive behavior more severely without imposing a new penalty for an earlier crime."

12

¶31 We agree with the State and affirm the District Court. Both Article I, Section 10 of the United States Constitution and Article II, Section 31 of the Montana Constitution prohibit ex post facto laws. In *Brander*, we described the practical meaning of this prohibition as follows,

> "[A]ny statute which punishes as a crime an act previously committed, which was innocent when done; *which makes more burdensome the punishment for a crime, after its commission*, or which deprives one charged with crime of any defense available according to law at the time when the act was committed, is prohibited as *ex post facto*."

*Brander*, 280 Mont. at 153, 930 P.2d at 34 (quoting *State v. Suiste*, 261 Mont. 251, 253, 862 P.2d 399, 400 (1993)) (alteration and emphasis in original).

¶32 Accordingly, "a law is *ex post facto* if it: [1] punishes as a crime an act which was not unlawful when committed; [2] makes punishment for a crime more burdensome; or [3] deprives [a] person charged with a crime of any defense available under the law at the time the act was committed." *State v. Mount*, 2003 MT 275, ¶ 24, 317 Mont. 481, ¶ 24, 78 P.3d 829, ¶ 24 (quotation omitted, alteration in original).

¶33 Under this standard, the 1995 amendments to DUI statutes do not constitute an ex post facto law. First, they do not punish a crime which was not unlawful when committed, nor does Anderson allege that they do. Further, those amendments do not deprive a person, like Anderson, of any defense available when the act was committed. Finally, they do not make the punishment for the 1992 BAC conviction more burdensome, but apply only to his current DUI conviction. As we stated in *Brander*,

> [T]he increase in punishment at issue here is a consequence of [the defendant's] present offense only and this enhancement neither punishes any previous conduct nor increases the penalty for any prior conviction of DUI. . . . That [defendant's] prior behavior is taken into account in

13

charging the current offense as a felony rather than as a misdemeanor does not, without more, constitute ex post facto legislation. As we pointed out in *State v. Coleman* (1979), 185 Mont. 299, 605 P.2d 1000, "[s]imply because a statute operates on events antecedent to its effective date does not make the statute ex post facto, nor does such operation make a law prohibitively retroactive." *Coleman*, 605 P.2d at 1010 (citing *Calder v. Bull*, 3 U.S. (3 Dall.) 386, 390, 1 L.Ed. 648 (1798) and *Cox v. Hart*, 260 U.S. 427, 435, 43 S.Ct. 154, 67 L.Ed. 332 (1922)).

*Brander*, 280 Mont. at 154, 930 P.2d at 35.

¶34    Contrary to Anderson's assertion, the 1995 amendments to the DUI statutes did not make his 1992 BAC conviction the functional equivalent of a DUI, but simply put him on notice that if he violated the DUI statute and had prior DUI or BAC convictions which were not expunged those prior violations could elevate a future DUI conviction to the level of a felony. As a result, it is not an ex post facto law, and the District Court did not err in including Anderson's 1992 BAC conviction for sentencing enhancement purposes.

## CONCLUSION

¶35    For these reasons, we affirm the District Court's conviction of Anderson.


                                                    /S/ PATRICIA COTTER


We concur:

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ JOHN WARNER
/S/ JIM RICE


14