FILED

December 2 2015

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 13-0686

DA 13-0686

IN THE SUPREME COURT OF THE STATE OF MONTANA

2015 MT 336

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

JACKIE LEE FAVEL,

      Defendant and Appellant.


APPEAL FROM:    District Court of the Twelfth Judicial District,
                In and For the County of Hill, Cause No. DC-12-122
                Honorable Daniel A. Boucher, Presiding Judge


COUNSEL OF RECORD:

      For Appellant:

          James Reavis, Assistant Appellate Defender, Helena, Montana

      For Appellee:

          Timothy C. Fox, Montana Attorney General, Brenda K. Elias, Assistant
          Attorney General, Helena, Montana

          Gina Dahl, Hill County Attorney, Ed Hirsch, Deputy County Attorney,
          Havre, Montana


                        Submitted on Briefs:  September 30, 2015
                                  Decided:  December 2, 2015

Filed:

                                      Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1    Jackie Lee Favel appeals her felony conviction from the Twelfth Judicial District Court, Hill County, for driving under the influence of alcohol (DUI).  We affirm.

¶2    Favel raises the following issue on appeal, which we restate as follows:

*Did the prosecution improperly comment upon the inference of intoxication contained within § 61-8-404(2), MCA, and assert that Favel was responsible for establishing her innocence, thereby denying Favel her due process right to a fair and impartial trial?*

**FACTUAL AND PROCEDURAL BACKGROUND**

¶3    On September 21, 2012, the Havre Police Department received a report of an intoxicated driver traveling from Chinook to Havre in a green Cadillac.  Soon thereafter, Sergeant Andrew Poulos observed a vehicle matching this description turn southbound onto 12th Avenue in Havre.  Sergeant Poulos began to follow the vehicle.  He observed the vehicle drift from the north side of the street to the south side and nearly hit two pedestrians.  Sergeant Poulos noted that the vehicle came "within feet" of the pedestrians and that the driver failed to apply the brakes.

¶4    Sergeant Poulos initiated a traffic stop and identified Favel as the driver.  He noticed that Favel's eyes were red and glassy; she was slurring her speech; and a strong odor of alcoholic beverage was coming from her breath.  After Favel exited the vehicle, Sergeant Poulos asked her to count from 11 to 23, count down from 33 to 21, and recite the alphabet.  Favel failed to complete any of these exercises correctly.

2

¶5 Next, Favel was asked to complete standardized field sobriety tests (SFSTs), including the walk-and-turn test and the one-leg stand test. On the walk and turn, Favel committed seven out of eight mistakes, including losing her balance, stepping off the line, and taking an incorrect number of steps. On the one-leg stand, Favel committed three out of four mistakes, including swaying, raising her arms, and putting her foot down. Based on his observations, Sergeant Poulos asked Favel to submit to a preliminary breath test. Favel refused.

¶6 Following the SFSTs, Sergeant Poulos placed Favel under arrest and transported her to the Hill County Detention Center. At the Detention Center, Favel was asked to submit to a breath sample for screening using the Intoxilyzer 8000. Favel again refused to submit to a breath test. After Favel's refusal, Sergeant Poulos applied for and received a search warrant authorizing him to obtain a sample of Favel's blood. Subsequent testing at the Montana State Crime Lab determined that Favel had a blood alcohol concentration of 0.13 percent.

¶7 The State charged Favel by Information with felony DUI, fourth or subsequent. The State later filed an Amended Information to include an alternative charge of operating a noncommercial vehicle with an alcohol concertation of 0.08 percent or more, also a felony.

¶8 Prior to trial, Favel filed a motion in limine requesting the court exclude evidence of preliminary breath test results and any argument by the prosecution that may shift the

burden of proof from the state to the defense. In regard to the second part of her motion, Favel stated:

> [A]lthough a failure to give a breath or blood test is admissible, any argument or comment by the State that Ms. Favel could have "proved his [sic] innocence" by giving a breath or blood test would be shifting of the burden to Ms. Favel to show his [sic] lack of criminal culpability.

In its response, the State did not object to the exclusion of the preliminary breath test results as Favel did not submit to a preliminary breath test. Regarding Favel's burden-shifting argument, the State contended that discussing the inference of intoxication is admissible evidence and does not shift the burden of proof onto the defendant. The State reasoned that § 61-8-404(2), MCA, "states that a refusal creates a rebuttable inference that the Defendant was under the influence" and "[s]uggesting to the jury that the Defendant refused because she was aware the result would be positive is exactly the type of inference a prosecutor may propose, and precisely the situation Mont. Code Ann. § 61-8-404(2) contemplates."

¶9 On the day of trial, prior to voir dire, the District Court considered and ruled from the bench on several outstanding motions. The court granted Favel's request to exclude evidence of the preliminary breath test. However, the court did not address the burden-shifting argument raised by Favel in the motion in limine. Instead, the court turned to other motions unrelated to this appeal. Favel did not bring the burden-shifting issue to the attention of the court or seek a ruling from the court.

¶10 At trial, the State called Sergeant Poulos to testify in its case-in-chief concerning the events of September 21, 2012. During direct examination with Sergeant Poulos, the

4

prosecutor asked: "[D]id you give her an opportunity to provide a [breath] sample to clear her of driving under the influence?" Sergeant Poulos replied, "I did." Favel did not object to the prosecutor's question or move to strike.

¶11 During argument, the prosecutor discussed Favel's refusal to submit to a breath test by commenting on the circumstances of Favel's stop, her performance on the SFSTs, and the results of her blood test. The prosecutor argued:

> These are all the signs of impairment that an officer is looking for in a DUI investigation. He saw them all. At this point, he turned to an instrument, a portable Breathalyzer test to determine the alcohol in her system. It is an instrument that could prove how much alcohol is in her system, could exonerate her, could prove her innocence.

The prosecutor then argued from the perspective of Sergeant Poulos:

> He went to the next part of the investigation which was taking her to the Hill County Detention Center . . . . He said, I'm going to have you retake these tests. I will give you another opportunity to prove to me you're not impaired. She refused. He said, well, all right, I'm going to read to you the Montana Implied Consent law. It's basically another iteration of you have the right to provide a breath—basically, you have given consent to provide a breath sample. At the same time, the Montana Implied Consent says you have the right to get your own independent blood draw. You can double-check our work. She refused again an instrument which could prove her innocence and she refused.

Lastly, the prosecutor addressed the inference of intoxication in rebuttal, stating:

> The next inference is that if a person refuses, you can infer that they are impaired, of course, obviously. Defense said the reason . . . she refused was because she is fiercely protective of herself. She's fiercely protective of a blood sample that can prove her innocence? It's completely illogical, makes no sense.

Favel did not object to any of the prosecutor's statements during closing or rebuttal.

5

¶12 After a two-day trial, a Hill County jury found Favel guilty of felony DUI. The District Court sentenced Favel to the Montana Department of Corrections for a term of 13 months, followed by a suspended term of 3 years.

## STANDARD OF REVIEW

¶13 Generally, this Court does not address issues raised for the first time on appeal. However, when a defendant's fundamental rights are invoked, we may choose to invoke the common law plain error doctrine where failing to review the claimed error may result in a manifest miscarriage of justice, may leave unsettled the question of the fundamental fairness of the trial or proceedings, or may compromise the integrity of the judicial process. *State v. Taylor*, 2010 MT 94, ¶ 12, 356 Mont. 167, 231 P.3d 79. Plain error review is discretionary, and we apply it on a case-by-case basis. *State v. Reim*, 2014 MT 108, ¶ 29, 374 Mont. 487, 323 P.3d 880.

## DISCUSSION

¶14 *Did the prosecution improperly comment upon the inference of intoxication contained within § 61-8-404(2), MCA, and assert that Favel was responsible for establishing her innocence, thereby denying Favel her due process right to a fair and impartial trial?*

¶15 Favel argues that the prosecutor's comments suggesting that she could have proven her innocence by providing a breath test to law enforcement were impermissible and constitute prosecutorial misconduct. She contends that the comments diluted her presumption of innocence and effectively shifted the burden of proof to her, reasoning that the comments go beyond discussing the rebuttable inference of a refusal contained within § 61-8-404(2), MCA.

6

¶16 In response, the State does not dispute that the prosecutor's comments were improper, but argues instead that Favel failed to preserve the issue for appeal because she did not contemporaneously object to the prosecutor's statements. The State asserts that, while a motion in limine may preserve an issue on appeal in some instances, Favel's motion in limine did not do so because the District Court did not definitively rule on her motion. Consequently, the State argues that Favel needed to object to the prosecutor's improper comments during trial in order to preserve her claims of prosecutorial misconduct.

¶17 Generally, "[a] defendant must make a timely objection to properly preserve an issue for appeal." *State v. Paoni*, 2006 MT 26, ¶ 35, 331 Mont. 86, 128 P.3d 1040; *see also* § 46-20-104(2), MCA. However, we have carved out an exception to the general rule under which a motion in limine may "preserve an issue for appeal in some instances even though a contemporaneous objection to an alleged error is not made at trial." *State v. Ankeny*, 2010 MT 224, ¶ 35, 358 Mont. 32, 243 P.3d 391. Although not provided for by statute or the Montana Rules of Evidence, "[a]uthority for the granting of a motion in limine rests in the inherent power of the court to admit or exclude evidence and to take such precautions as are necessary to afford a fair trial for all parties." *Wallin v. Kinyon Estate*, 164 Mont. 160, 164-65, 519 P.2d 1236, 1238 (1974).

¶18 Favel maintains that her motion in limine adequately preserved the issue for appeal. She argues that, contrary to the State's assertions, "this Court's preservation

analysis has focused on whether the trial court was 'given an opportunity to consider' the issue," rather than whether the trial court issued a final ruling.

¶19 We agree with the State that Favel needed to object at trial to preserve her claims of prosecutorial misconduct. As a general proposition, Favel is correct in regard to the focus of this Court's analysis in previous cases involving motions in limine; however, in each of our prior cases in which we have *permitted* a motion in limine to preserve an issue on appeal, the district court provided a definitive ruling. *See*, *e.g.*, *Anderson v. BNSF Ry.*, 2015 MT 240, 380 Mont. 319, 354 P.3d 1248; *State v. Crider*, 2014 MT 139, 375 Mont. 187, 328 P.3d 612; *Peterson-Tuell v. First Student Transp., LLC*, 2014 MT 307, 377 Mont. 113, 339 P.3d 16; *State v. Vukasin*, 2003 MT 230, 317 Mont. 204, 75 P.3d 1284. In *Vukasin*, we considered our previous cases wherein we had concluded that an issue had been properly preserved by a party's pre-trial motion. *Vukasin*, ¶ 34. After reviewing and analyzing these cases, we concluded that in "each of these cases, the pre-trial motion in limine was denied by the district court." *Vukasin*, ¶ 34. We explained that "the district court was directly faced with the question and ruled against the defendant, thereby preserving for appeal any evidentiary issue that was specifically addressed in the motion." *Vukasin*, ¶ 34. Thus, we have never allowed a party to preserve an issue based on a motion in limine without the party having obtained a definitive ruling from the district court on the issue.

¶20 Such an approach is consistent with other state courts which permit a motion in limine to preserve issues. *See*, *e.g.*, *Milliken v. Dartmouth-Hitchcock Clinic*, 154 N.H.

8

662, 666, 914 A.2d 1226, 1230 (2006) ("[a] motion in limine is sufficient to preserve an issue for appeal without an objection at trial if the trial court *definitively rules on the issue prior to trial*.") (emphasis added); *Richmond v. State*, 118 Nev. 924, 59 P.3d 1249 (2002); *Kobashigawa v. Silva*, 129 Haw. 313, 300 P.3d 579 (2013). Similarly, the federal courts require a party to renew an objection at trial unless the trial court provides a definitive ruling on the motion. *See* Fed. R. Evid. 103(a) ("Once the court makes a *definitive ruling* on the record admitting or excluding evidence, either at or before trial, a party need not renew an objection or offer of proof to preserve a claim of error for appeal."). (Emphasis added.)

¶21    Moreover, a district court may justifiably wish to delay ruling on admissibility of evidence until after the trial has begun. Motions in limine are frequently made in anticipation of hypothetical circumstances that may not develop at trial and often times on a record that is incomplete or only partially developed. *See State v. Daniels*, 2011 MT 278, 362 Mont. 426, 265 P.3d 623. Consequently, a trial court will often be in a better position to rule on evidentiary issues in light of specific facts and circumstances that arise during trial. *See, e.g., State v. Franks*, 2014 MT 273, ¶ 21, 376 Mont. 431, 335 P.3d 725 ("Based on the information and arguments presented to the District Court at the motion in limine stage, and given the overwhelmingly prejudicial nature of child molestation evidence, the wiser course would have been to withhold ruling on its admissibility."). Therefore, we conclude that in order for a motion in limine to sufficiently preserve an

issue on appeal without an objection at trial, a party must obtain a definitive ruling on the issue from the district court.

¶22 Applying this approach, we conclude Favel has not preserved the present issue for appeal. Here, the District Court did not provide a definitive ruling on Favel's motion in limine regarding whether the prosecutor could comment that Favel "could have proven her innocence" and, as Favel contends, shift the burden of proof. While the court ruled on the motion in limine to the extent it excluded evidence of the preliminary breath test, the court did not rule on the propriety of any potential questions and argument from the prosecutor. Favel failed to object during the prosecutor's direct-examination and during closing arguments and, as a result, the prosecutor continued to repeat her questions and argument throughout the proceedings. We will not place "a district court in error for an action in which the appealing party acquiesced or actively participated." *Reim*, ¶ 28. Favel failed to do "what [s]he could to raise the issue in the district court." *Vukasin*, ¶ 30. We hold that Favel did not properly preserve her allegations of prosecutorial misconduct for appeal.

¶23 That, however, does not end our inquiry. Favel argues in the alternative that the prosecutor's comments are reviewable by this Court under the plain error doctrine. We review an unpreserved claim, under the common law plain error doctrine, at our discretion. *Crider*, ¶ 30. We invoke the plain error doctrine sparingly, on a case-by-case basis. *Daniels*, ¶ 32. Before this Court will find plain error, the appealing party must: "(1) show that the claimed error implicates a fundamental right and (2) 'firmly convince'

10

this Court that failure to review the claimed error would result in a manifest miscarriage of justice, leave unsettled the question of the fundamental fairness of the trial or proceedings, or compromise the integrity of the judicial process." *Daniels*, ¶ 32. In making this inquiry, "we consider the totality of circumstances of each case." *State v. Lindberg*, 2008 MT 389, ¶ 34, 347 Mont. 76, 196 P.3d 1252.

¶24 Section 61-8-404(2), MCA, provides that the "trier of fact may infer from [a defendant's] refusal [to submit to a breath test] that the person was under the influence." We have on several previous occasions sustained the constitutionality of § 61-8-404(2), MCA, in the face of due process challenges that the statute improperly shifted the burden of proof to the defendant. *City of Great Falls v. Morris*, 2006 MT 93, 332 Mont. 85, 134 P.3d 692; *State v. Michaud*, 2008 MT 88, 342 Mont. 244, 180 P.3d 636; *State v. Anderson*, 2008 MT 116, 342 Mont. 485, 182 P.3d 80. We have further permitted the prosecution to comment upon the inference of intoxication provided for by the statute. *State v. Slade*, 2008 MT 341, ¶ 29, 346 Mont. 271, 194 P.3d 677 ("Because the rebuttable presumption is constitutional and did not shift the burden of proof to Slade, it was not improper for the prosecutor to comment upon it."). We have also concluded that evidence of a defendant's refusal to take a sobriety test is probative evidence under the statute and may be used by the State to argue the defendant's consciousness of guilt. *Michaud*, ¶ 55 (concluding that the defendant's refusal to submit to a breath test was admissible because "there is a rational connection between driving while intoxicated and refusing to take a sobriety test.").

¶25 In this instance, however, we agree with Favel that the prosecutor's comments were improper. "A fundamental principle of our criminal justice system is that the State prove every element of a charged offense beyond a reasonable doubt." *Daniels*, ¶ 33. The United States Supreme Court has explicitly held that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 363-64, 90 S. Ct. 1068, 1072-73 (1970). A court "must carefully guard against dilution of the principle that guilt is to be established by probative evidence and beyond a reasonable doubt." *Estelle v. Williams*, 425 U.S. 501, 503, 96 S. Ct. 1691, 1693 (1976). A court must do so "based on reason, principle, and common human experience." *Estelle*, 425 U.S. at 503, 96 S. Ct. at 1693.

¶26 While we have made clear, as explained above, that the prosecution can introduce evidence of a defendant's refusal to take a breath test to argue the defendant's consciousness of guilt, the comments complained of in this case—that Favel could have "proven her innocence" by submitting to a breath test—have the potential to blur the distinction between a defendant's state of mind and the State's burden of proof. It is true, of course, that the prosecutor's comments and the inference contained within § 61-8-404(2), MCA, share a common thread. Underlying both is an assumption that the person who believes that he or she is not intoxicated would likely be willing to provide a breath test to *demonstrate, show, or otherwise prove* that he or she is, in fact, not intoxicated. Nonetheless, we cannot countenance a prosecutor's use of burden of proof

12

language to explain a defendant's mental state. The risk is simply too great that the State's burden of proof in the mind of a juror will be diminished by the repeated use of burden of proof language—such as demonstrate, show, and prove—in reference to what the defendant could have done. Thus, we conclude the prosecutor's remarks, indicating that if Favel were innocent she would have proven her innocence by submitting to a breath test, were improper.

¶27 That said, based on the record in this case, we conclude the prosecutor's comments do not rise to a level sufficient to find plain error. We are mindful that under plain error review, unlike harmless error review, the appealing party carries the burden of proof. *State v. Hart*, 2000 MT 332, ¶ 52, 303 Mont. 71, 15 P.3d 917. "The instances in which we have exercised our common law power of plain error review are rare." *Hart*, ¶ 51. We have similarly refused on numerous instances to conduct plain error review of a prosecutor's comments, "even in cases where we have concluded that the comments were improper." *State v. Aker*, 2013 MT 253, ¶ 29, 371 Mont. 491, 310 P.3d 506.

¶28 We are not convinced this is an appropriate case in which to invoke the plain error doctrine to reverse a conviction. First, the court properly instructed the jury on the State's burden of proof regarding each element of driving while under the influence and on the presumption of Favel's innocence. We have explained that "American jurisprudence depends on a jury's ability to follow instructions and juries are presumed to follow the law that courts provide." *State v. Sanchez*, 2008 MT 27, ¶ 57, 341 Mont. 240,

177 P.3d 444.  Prior to opening statements, the District Court instructed the jury on the burden of proof as follows:

> The State of Montana has the burden of proof of proving the guilt of the Defendant beyond a reasonable doubt . . . .  The defendant is not required to prove her innocence or present any evidence.

The court again instructed the jury prior to deliberations:

> The defendant is presumed to be innocent of the charge against her.  This presumption remains with her throughout every stage of the trial and during your deliberations on the verdict.  It is not overcome unless from all evidence in the case you are convinced beyond a reasonable doubt that the defendant is guilty.

> By her plea of not guilty, the defendant denies all allegations of the charge against her.  The defendant is not required to prove her innocent or present evidence.

> The State of Montana has the burden of proving the guilt of the defendant beyond a reasonable doubt.

Second, the prosecutor continually reminded the jury throughout the proceedings that the State carried the burden of proof.  The prosecutor reiterated during voir dire, opening, and closing: "it's the State's job to prove a person guilty beyond a reasonable doubt" and "the Defendant doesn't have to prove anything."  Lastly, the prosecutor relied on evidence other than Favel's refusal to prove her case.  The jury heard Sergeant Poulos's testimony in which he described observing indicators of alcohol impairment; the jury heard Sergeant Poulos testify that Favel nearly hit two pedestrians with her vehicle; and the jury watched Sergeant Poulos's on-board video corroborating his testimony.  Finally, the State introduced evidence from the Montana State Crime Lab showing that Favel's blood alcohol content was 0.13 grams per 100 milliliters of whole blood.

14

¶29 Having reviewed the jury instructions, the trial transcripts, and the evidence presented against Favel, we cannot say that the failure to review Favel's claims will result in a manifest miscarriage of justice, leave unsettled the fundamental fairness of Favel's trial, or comprise the integrity of the judicial process. We decline to reverse on Favel's claims of prosecutorial misconduct under the plain error doctrine.

¶30 Affirmed.

/S/ LAURIE McKINNON

We concur:

/S/ BETH BAKER
/S/ PATRICIA COTTER
/S/ MICHAEL E WHEAT
/S/ JIM RICE

Justice Laurie McKinnon, specially concurring.

¶31 I write separately to address some issues that have arisen within our plain error jurisprudence, which seem to be contributing to its state of disarray. First, we have adopted two distinct lines of analysis for evaluating unpreserved claims of error under the plain error doctrine. Second, adding to the confusion, we have been inconsistent with respect to the meaning of the term "plain error review," "plain error doctrine," and "plain error," particularly as it relates to a decision declining to exercise, conduct, or otherwise

15

engage in the standard of review. Lastly, we have been unclear in our application of the specific considerations or criteria relevant to plain error review.

¶32 Preliminarily, plain error review is a standard of review, closely related to harmless error review. *State v. Martinez*, 188 Mont. 271, 279, 613 P.2d 974, 979 (1980); § 46-20-701, MCA; *United States v. Olano*, 507 U.S. 725, 731-32, 113 S. Ct. 1770, 1776 (1993). When a defendant alleges an error in the trial court proceedings, a court may apply either harmless error review or plain error review, depending upon whether the claimed error is preserved on appeal. *See Town of Columbus v. Harrington*, 2001 MT 258, 307 Mont. 215, 36 P.3d 937. If a defendant preserves his claim of error by raising a contemporaneous objection during the trial court proceedings or by submitting a motion in limine, we apply harmless error review and the State has the burden of demonstrating the error was harmless. Conversely, if a defendant fails to properly preserve his issue for appeal, we apply the plain error standard of review and the defendant has the burden of persuasion. *Olano*, 507 U.S. at 734-35, 113 S. Ct. at 1778; *State v. Godfrey*, 2004 MT 197, 322 Mont. 254, 95 P.3d 166.

¶33 Therefore, in general, we may either review under harmless error or plain error. Although there may be instances in which we actually do decline to review under the plain error standard of review; for example, a claim raised in the reply brief[1] or the

---

[1]*State v. Johnson*, 2010 MT 288, ¶ 13, 359 Mont. 15, 245 P.3d 1113 ("we previously have refused to invoke the common law doctrine of plain error review when a party raises such request for the first time in his reply brief.").

doctrine of invited error[2]—in those instances we do not exercise appellate jurisdiction over the claim and do not review the proceedings. Any time we review proceedings of the trial court, we need to do so under a standard of review. If we are going to review trial court proceedings based on an unpreserved claim of trial error, we cannot decline to apply plain error review as this is the only applicable standard of review.

¶34 Montana's plain error doctrine derives from our decision in *State v. Finley*, 276 Mont. 126, 915 P.2d 208 (1996). In *Finley*, we first enunciated our adoption of the common law doctrine of plain error to "correct obvious, fundamental, constitutional, or substantial errors" not objected to at trial which affect the "fairness, integrity, and public reputation of judicial proceedings." *Finley*, 276 Mont. at 134, 915 P.2d at 213. Drawing from federal precedent, we enunciated the doctrine as follows:

> [W]e hold that this Court may discretionarily review claimed errors that implicate a criminal defendant's fundamental constitutional rights, even if no contemporaneous objection is made . . . where failing to review the claimed error at issue may result in a manifest miscarriage of justice, may leave unsettled the question of the fundamental fairness of the trial or proceedings, or may compromise the integrity of the judicial process. In so holding, [we rely] on our inherent power of appellate review under Montana's Constitution.

*Finely*, 276 Mont. at 137-38, 915 P.2d at 215. The particular facts and circumstances of each case dictate the applicability of the plain error doctrine. *Finley*, 276 Mont. at 134, 915 P.2d at 215.

---

[2] Some courts have recognized a rule known as the doctrine of invited error, which prohibits review in certain circumstances despite the otherwise applicability of plain error review. *See, e.g., United States v. Perez*, 116 F.3d 840, 845 (9th Cir. 1997) (en banc) ("We have held repeatedly that where the defendant himself proposes allegedly flawed jury instructions, we deny review under the invited error doctrine.").

¶35    In the wake of *Finley*, we began to apply two different analytical approaches for conducting plain error review, using the *Finley* criteria in different ways. Our inconsistent terminology has added to the confusion and appears inextricably intertwined with the creation of these two divergent strains of plain error review. Justice Leaphart recognized the problem in *State v. Haagenson*, 2010 MT 95, 356 Mont. 177, 232 P.3d 367, explaining "[w]e have not been consistent in our use of the verb 'decline' as it relates to the 'plain error doctrine' versus 'plain error review.'" *Haagenson*, ¶ 25 (Leaphart, J., concurring). Justice Leaphart noted that we have cases in which we simply decline to exercise plain error review with essentially no explanation or indication that we analyzed the appeal under the *Finley* criteria; cases in which we engage in the *review* of the alleged plain error, but decline to invoke the plain error *doctrine*; and cases where we discuss the merits of the claim and then decline to exercise plain error *review*. *Haagenson*, ¶ 25 (Leaphart, J., concurring). These semantic inconsistencies have been difficult for the Court and litigants to interpret and have interfered with a consistent application of analysis when addressing a claim of unpreserved error.

¶36    Our confusing terminology is due, in part, to the emergence in Montana's jurisprudence of two identifiable analytical approaches to a single standard of review. On the one hand, what might be referred to as the traditional approach, we examine the record and the merits of the claim to determine whether the *Finley* criteria are satisfied. If they are, we next decide whether to invoke our discretion to reverse the trial court. This approach allows for consideration of the *Finley* criteria independently or together,

depending on the facts and circumstances of the particular case, and also allows this Court to consider whether there was any error in the first instance. If any one of the criteria is not met, including that error has not actually occurred, then our analysis may be shortened by simply affirming the trial court. Importantly, even if the *Finley* criteria are satisfied, this Court still has the discretion to deny relief.

¶37 We have followed this traditional approach, although with incorrect terminology, in many cases. *See*, *e.g.*, *State v. Crider*, 2014 MT 139, 375 Mont. 187, 328 P.3d 612 (stating that "we decline to exercise plain error review," after extensively reviewing the proceedings and the merits of an unpreserved claim of error ); *In re D.K.D.*, 2011 MT 74, 360 Mont. 76, 250 P.3d 856 (stating that "we decline to exercise plain error review here," after reviewing the proceedings and "conclud[ing] that there was no plain error here"); *State v. White*, 2014 MT 335, 377 Mont. 332, 339 P.3d 1243 (stating that "[w]e decline to exercise plain error review," after reviewing the proceedings and concluding that "it was an error to fail to comply with § 46-7-102, MCA"); *State v. Norquay*, 2011 MT 34, 359 Mont. 257, 248 P.3d 817 (stating, "[w]e decline to apply plain error review," after reviewing the proceedings and concluding that there was error); *State v. Thorp*, 2010 MT 92, 356 Mont. 150, 231 P.3d 1096 (after reviewing the record to determine whether the State was improperly eliciting a response from its witness regarding credibility of the victim, we concluded that the "response does not rise to the level of impermissible vouching that would warrant plain error review"). In these instances, we are using the term "plain error review" incorrectly as short-hand for whether reversing the trial court is

appropriate. Having already reviewed the proceedings and concluded that no error exists, we are merely explaining that reversal is inappropriate under the plain error doctrine. In other words, "we decline to exercise plain error review" translates to "we decline to exercise plain error review *to reverse*." While our terminology in the aforementioned cases is incorrect and confusing, these cases demonstrate that we considered in the first instance whether there was, in fact, any error.

¶38     In contrast, there have also been numerous cases where this Court has applied what might be referred to as a "threshold" analytical approach—which appears unique to Montana—requiring satisfaction of the *Finley* criteria as an initial inquiry prior to addressing the merits of the alleged error. Instead of applying the *Finley* criteria to determine whether reversing the trial court is appropriate, in these cases we apply the *Finley* criteria as a threshold for determining whether we will even address the merits of the claimed error. This approach embroils the Court in a review of the trial court proceedings and inevitably leads to at least some consideration of the merits of the alleged error. We then find ourselves in the unsound position of holding we will not exercise plain error review to review the error even though we have already reviewed the proceedings. *See, e.g., State v. Legg*, 2004 MT 26, 319 Mont. 362, 84 P.3d 648 (after reviewing the record "Legg does not meet the narrow [*Finley*] criteria required to invoke our discretionary plain error review, we decline to address the merits of Legg's argument under plain error review"); *State v. Hart*, 2000 MT 332, 303 Mont. 71, 15 P.3d 917 (after reviewing the record, we determined that Hart failed to meet the second prong of *Finley*

20

and "decline[d] to address Hart's contention" that the prosecutor's statements violated his right to confrontation, reasoning that "Hart has failed to demonstrate that this is an appropriate use of our common law power of plain error review").[3] To use the harmless error analogy, this threshold inquiry is akin to reviewing the proceedings under the harmless error standard of review; concluding that the second prong of harmless error review is not satisfied because the defendant was not prejudiced; declining to decide whether there was error because the second prong is not satisfied; and then stating that the harmless error standard of review is an inappropriate method of review. As was the case under the traditional approach, we are using the term "plain error review" incorrectly. When we use the *Finley* criteria as a threshold to our inquiry and state that we "decline to engage in plain error review," we are actually engaging in plain error review, but are declining to resolve the merits of the claimed error; that is, we are *engaging in plain error review* but *declining to determine whether there is error*.

¶39 In my opinion, the time has come to reconcile these two conflicting lines of analysis. We should do so not only to promote internal consistency within our opinions, but also to promote consistency in appellant arguments. For instance, in this case, the State did not address the merits of Favel's claim of error in its brief—likely understanding our standard of review to require a threshold showing of the *Finley* criteria before considering the merits of the alleged error.

---

[3] *See also Thorp*, ¶ 45 (Nelson, J., concurring); *Jackson*, ¶ 75 (Nelson, J., concurring).

21

¶40 In my view, the traditional method provides the most fundamentally sound analysis. First, the traditional approach is consistent with *Finley* and furthers the purposes underlying the plain error doctrine. The plain error doctrine is "*not a rule of reviewability, rather, it is a rule of reversibility*, i.e., it is a doctrine that a reviewing court invokes in order to *rectify* a trial court ruling that, although either not properly preserved or never raised at all in the trial court, nonetheless requires reversal of the trial court's judgment, for reasons of policy." 5 Am. Jur. 2d *Appellate Review* § 716 (2014) (emphasis added). By using the *Finley* criteria to determine whether to *review* the claimed error, rather than using the criteria to determine whether to *reverse* the trial court, we necessarily lose focus on what should be the central inquiry: to discretionarily "correct error not objected to at trial . . . [which] affects the fairness, integrity, and public reputation of judicial proceedings." *Finely*, 276 Mont. at 134, 915 P.2d at 213. Our exercise of discretion must be guided by whether the error necessitates reversal because it has affected the fairness and integrity of the proceeding. In focusing on this inquiry, we inevitably will have to consider the error itself.

¶41 Second, refusing to address the merits of the claim until after a party makes a threshold showing is against the clear weight of authority. The overwhelming consensus among appellate courts is that the "first step of plain-error review is to determine whether any error occurred." *People v. Lewis*, 234 Ill. 2d 32, 43, 912 N.E.2d 1220, 1227

22

(2009).[4] Indeed, Montana stands alone in its refusal to address the merits until a preliminary plain error test has been satisfied. Uniformity with our sister jurisdictions counsels heavily in favor of the traditional method, particularly in an area of the law that is rooted in common law, where we stand to benefit from case law in these other jurisdictions.

¶42 Lastly, in using the threshold method—with the *Finley* criteria inherently requiring a certain amount of discussion on the merits and with the Court unable to resolve the merits—we frequently find ourselves in the untenable position of attempting to walk a fine line, leading to comments from this Court, such as: we find the prosecutor's comments "troubling," *State v. Lacey*, 2012 MT 52, ¶ 24, 364 Mont. 291, 272 P.3d 1288, "we do not condone the prosecutor's comments," *State v. Lindberg*, 2008 MT 389, ¶ 34, 347 Mont. 76, 196 P.3d 1252, or worse yet, the defendant "fail[ed] to demonstrate the prosecutor's comments amounted to any error," but we refuse to "set a precedent." *State v. Daniels*, 2003 MT 247, ¶¶ 27-28, 317 Mont. 331, 77 P.3d 224. Trial courts and litigants deserve a clear statement on the standard of review and whether there is error or not. While resolving the merits may necessarily require more effort by this

---

[4] *Accord State v. Kelley*, 855 N.W.2d 269, 273-74 (Minn. 2014); *State v. Lawrence*, 365 N.C. 506, 511-12, 723 S.E.2d 326, 330 (2012); *People v. Carines*, 460 Mich. 750, 765, 597 N.W.2d 130, 139 (1999); *State v. Miller*, 194 W. Va. 3, 18, 459 S.E.2d 114, 129 (1995); *State v. Dotson*, 450 S.W.3d 1, 49 (Tenn. 2014); *People v. Hampton*, 746 P.2d 947, 953 (Colo. 1987); *State v. Olander*, 1998 N.D. 50, ¶ 14, 575 N.W.2d 658 (1998); *Snow v. State*, 2009 WY 117, ¶ 13, 216 P.3d 505 (2009); *State v. Russell*, 159 N.H. 475, 489, 986 A.2d 515, 527 (2009). Similarly, under federal law the initial inquiry under the plain-error doctrine is to determine whether there is error. *Johnson v. United States*, 520 U.S. 461, 466-67, 117 S. Ct. 1544, 1548-49 (1997).

Court, the guidance that is provided to litigants and trial courts will generally outweigh any effort saved by declining to address the merits of the alleged error.

¶43    In my opinion, we must remain consistent with *Finley* and the principles articulated in federal precedent upon which *Finley* relied.  In *Finley* we adopted the plain error standard used by the United States Supreme Court in *United States v. Atkinson*, 297 U.S. 157, 56 S. Ct. 391 (1936).  *Finley*, 276 Mont. at 134, 915 P.2d at 213.  *See also*, *State v. Reichmand*, 2010 MT 228, ¶ 48, 358 Mont. 68, 243 P.3d 423 (Rice, J., dissenting) (explaining that "[o]ur *Finley* plain error test is nearly identical to the plain error test announced in *U.S. v. Atkinson*").  In *Olano*, the Supreme Court clarified *Atkinson* by explaining relevant considerations for plain error review; there must be: (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) affects the fairness, integrity, or public reputation of the judicial proceedings.  *Olano*, 507 U.S. at 735-37, 113 S. Ct. at 1778-79.  The *Finley* criteria and the federal test share common beginnings and our analysis in practice, to the extent it conforms to any well-defined standard, follows the federal test.

¶44    For example, we have held it is axiomatic under our standard of review that there needs to be error to reverse the trial court.  *State v. Arlington*, 265 Mont. 127, 150, 875 P.2d 307, 321 (1994).  Also consistent with federal precedent, we have held the error must be "plain."  S*tate v. Godfrey*, 2004 MT 197, ¶ 38, 322 Mont. 254, 95 P.3d 166 (explaining that a "fundamental aspect of 'plain error,' is that the alleged error indeed must be 'plain.'"); *State v. Upshaw*, 2006 MT 341, ¶ 26, 335 Mont. 162, 153 P.3d 579

24

("A fundamental aspect of 'plain error,' is that the alleged error must indeed be 'plain.'"); *State v. Tadewaldt*, 2010 MT 177, ¶ 20, 357 Mont. 208, 237 P.3d 1273 ("A prerequisite to plain error review is that it be plain that there was error at trial.").[5]

¶45 We have on several previous occasions characterized the fundamental rights prong of the *Finley* criteria in terms of substantial rights, which is similarly consistent with the federal courts. *Arlington*, 265 Mont. at 152, 875 P.2d at 322 ("The 'plain error' doctrine provides a remedy where substantial rights of a party have been infringed."). *See also, State v. Wilkins*, 229 Mont. 78, 746 P.2d 588 (1987); *State v. McDonald*, 2013 MT 97, 369 Mont. 483, 299 P.3d 799. Furthermore, the United States Supreme Court has explained, "Normally, although perhaps not in every case, the defendant must make a *specific showing of prejudice* to satisfy the 'affecting substantial rights'" prong of plain error review. *Olano*, 507 U.S. at 735, 113 S. Ct. at 1778 (emphasis added). Here, perhaps more than any element of the federal plain error test—other than whether there need be error—we are in agreement. Prejudice permeates throughout our analysis in nearly every plain error review case. *See, e.g., State v. Schaeffer*, 2014 MT 47, ¶ 24, 374

---

[5] Here again, we have been inconsistent in our case law, but currently require that the error be plain. In *State v. Taylor*, 2010 MT 94, ¶ 17, 356 Mont. 167, 231 P.3d 79, we overruled *Godfrey*: "In short, the 'error must be plain' language is not an independent third requirement of common plain error. Rather, it serves as a guide in determining whether the second prong of the *Finley* test has been satisfied." Nonetheless, we again reversed ourselves in *Tadewaldt*. As a general proposition, since *Tadewaldt*, we have required that the error be plain, either expressly or implicitly. *Compare In re D.K.D.*, ¶ 16 ("We have recently held that, to apply the common law plain error doctrine, the 'error must be plain' and we must be 'firmly convinced' that an aspect of the proceeding, if not addressed, would result in one of the aforementioned consequences.") *with State v. Ugalde*, 2013 MT 308, ¶ 62, 372 Mont. 234, 311 P.3d 772 ("While we do not decide whether the prosecution's argument was objectionable, we conclude after a review of the record and the District Court's careful consideration of the issue that—in the context of the surrounding statements—it did not rise to the level of plain error.").

Mont. 93, 321 P.3d 809 ("Schaeffer has not demonstrated that the prosecutor's reference to rising insurance rates was prejudicial when viewed in this context."); *White*, ¶ 36 ("White was not prejudiced by his absence from the fitness proceeding."); *State v. Wagner*, 2009 MT 256, ¶ 21, 352 Mont. 1, 215 P.3d 20 ("This inference of guilt caused actual prejudice to Wagner constituting plain error."); *Arlington*, 265 Mont. at 153, 875 P.2d at 322 ("we conclude that there is no evidence of any prosecutorial misconduct or prejudice here at all").

¶46 Finally, the language of the fourth element of the federal test corresponds to the *Finley* criteria almost verbatim: "leave unsettled the question of the fundamental fairness of the trial or proceedings, or may compromise the integrity of the judicial process." *Finley*, 276 Mont. at 137, 915 P.2d at 215.

¶47 It is my view that we have drifted from the principles and inquiry first enunciated in *Finley*. We have infused into our opinions confusing semantics, and added further confusion through the development of two analytical frameworks for the same standard of review. As a result, we have provided little guidance or consistency in our precedent. We do not address requests to exercise plain error review in a vacuum. When we review a claim of unpreserved error it must be pursuant to a standard of review: plain error review. When this Court looks at a claim of unpreserved error, no matter how minimal the examination, we are conducting plain error review. Whether we exercise our appellate authority to reverse is discretionary and will depend on consideration of the relevant criteria. If the shortest path to resolution of the claim is to find that there was no

26

error, then we have the flexibility to make such a determination.  I would not confuse what is otherwise a straightforward and clear standard of review.

¶48     I offer the above analysis with the hope that, in due course, it will be seized upon to provide consistency in our opinions and guidance for those litigating before this Court.


                                    /S/ LAURIE McKINNON